542

BOARD OF CERTIFIED SAFETY PROFESSIONALS OF THE AMERICAS, INC., Appellant, v. J. THOMAS JOHNSON, Director of Revenue, *et al.*, Appellees.

*Opinion filed June 6, 1986.*

CLARK, C.J., dissenting.

Bernard A. Puglisi and Mary G. Gorski, of Champaign, for appellant.

Neil F. Hartigan, Attorney General, of Chicago (Roma Jones Stewart, Solicitor General, and Patricia Rosen, Assistant Attorney General, of Chicago, of counsel), for appellee J. Thomas Johnson.

Thomas J. Difanis, State's Attorney, of Champaign (Trisha Crowley, Assistant State's Attorney, of counsel), for appellee Beverly Jean Munds.

JUSTICE SIMON delivered the opinion of the court:

The petitioner, the Board of Certified Safety Professionals of the Americas, Inc. (Board), is a not-for-profit corporation that issues certificates to safety professionals who pass examinations it conducts. In October 1981, the Board purchased land in Savoy, Illinois, on which it constructed its corporate office. In August 1982, the Board applied for a partial real estate tax exemption, which was denied by the Champaign County board of review in March 1983. The Illinois Department of Revenue affirmed the denial. On review of the Department's decision, the Director of the Department again denied the Board's request for a tax exemption.

The Board then filed a complaint for administrative review in the circuit court of Champaign County. The circuit court held that the legislative exemption for property used for "mechanical" purposes in section 19.10 of the Revenue Act of 1939 (Ill. Rev. Stat. 1983, ch. 120, par. 500.10) is unconstitutional because it exceeds the scope of article IX, section 6, of the Illinois Constitution of 1970 (Ill. Const. 1970, art. IX, sec. 6); that the record supported the Department's finding that the Board's property was not used exclusively or primarily for charitable or educational purposes; and that the denial of a tax exemption to the Board did not violate equal protection. The circuit court thus affirmed the Department's decision and entered a judgment against the Board. Pursuant to Supreme Court Rule 302(a) (103 Ill. 2d R. 302(a)), the Board appealed directly to this court from the circuit court's order declaring the statutory exemption for property used for mechanical purposes (Ill. Rev. Stat. 1983, ch. 120, par. 500.10) unconstitutional.

According to its articles of incorporation, the Board was established by the American Society of Safety Engineers in 1969 "[f]or charitable, scientific, and educational purposes and to promote the advancement of safety through the issuance of a certificate to any individual competent to be designated as a 'Certified Safety Professional' ***." The Board is now sponsored by four organizations: the American Society of Safety Engineers, the American Industrial Hygiene Association, the Systems Safety Society, and the Society of Fire Protection Engineers.

To achieve its purposes, the Board offers an examination twice a year at 25 to 30 locations throughout the United States and overseas. The exam is prepared in conjunction with another organization known as the Professional Examination Service and consists of two parts: a core exam covering six areas of knowledge (basic and

applied sciences, safety-program management and evaluation, fire prevention and protection, equipment and facilities, environmental agents, and systems product safety), and an advanced exam leading to certification as a "safety professional" in one of five categories (comprehensive practice, engineering, management, systems safety, or products safety). The core exam may be taken by any applicant who has achieved the required academic training in the field of safety and has at least one year of professional safety experience. If an applicant is currently a registered professional engineer or is certified by the American Board of Industrial Hygiene or the American Board of Health Physics, the core exam is waived. Only a person who has passed the core exam or who meets the criteria for waiver may take the advanced exam and be certified as a "safety professional." The Board charges a fee to take an exam, to retake a section that an applicant has failed, and to renew a certification.

There are currently about 5,500 safety professionals in good standing residing in all 50 States and 16 foreign countries, 358 of whom live in Illinois. In addition to the preparation and administration of the exams, the Board maintains a library of standards and publications relating to the safety profession and publishes a newsletter three times a year.

The Board contends that its property is exempt from taxation because its activities fall within the statutory exemption for property used for school "or other educational purposes" (Ill. Rev. Stat. 1983, ch. 120, par. 500.1). Relying on *Association of American Medical Colleges v. Lorenz* (1959), 17 Ill. 2d 125, the Board argues that a taxpayer need not be a school offering classroom instruction to qualify for an exemption for "educational purposes," and that, like the taxpayer in *American Medical Colleges*, the Board uses its property to improve ed-

ucational standards in its field, to publish newsletters, to administer examinations, and to maintain a library of relevant material.

However, the Board's reliance on *American Medical Colleges* is misplaced. The holding in that case was that an organization that is created by tax-exempt institutions that join together to function more efficiently is also entitled to an exemption. (See *Association of American Medical Colleges v. Lorenz* (1959), 17 Ill. 2d 125, 129.) In the present case, the organizations that sponsor the Board are not themselves tax exempt. Moreover, since the State does not license or register safety professionals, the Board's ˙activities do not " 'substantially lessen[ ] what would otherwise be a governmental function and obligation.' " (*Milward v. Paschen* (1959), 16 Ill. 2d 302, 308.) The Board cannot claim an exemption for activities that would not entitle its sponsors to an exemption. Thus, the Board does not meet the requirements for an exemption for property used for educational purposes.

Similarly, the Board's contention that it is entitled to a tax exemption because its property is used exclusively for charitable purposes (Ill. Rev. Stat. 1983, ch. 120, par. 500.7) must fail. The criteria for determining whether an organization qualifies for this exemption as set out in *Methodist Old Peoples Home v. Korzen* (1968), 39 Ill. 2d 149, 156-57, include the requirements that the organization benefit the public at large, reduce the burdens of government, and derive its funds from public and private charity. However, the Board's activities benefit primarily a particular class of people, namely safety professionals, and only indirectly the general public. Moreover, the public benefits of the activities of the members of the safety profession are the result of services rendered by those members, who would perform the same function with or without Board certification. Further, the Board's

activities do not reduce the State's burdens since, as noted above, the State does not license or register safety professionals. Finally, the Board derives its funds from examination and renewal fees, and not from public or private charity.

The Board next contends that the legislative exemption for property used for "mechanical" purposes in section 19.10 of the Revenue Act of 1939 (Ill. Rev. Stat. 1983, ch. 120, par. 500.10) is constitutional and applicable to its property. According to the Board, the word "mechanical" has historically denoted "scientific" or "related to the study of engineering." Because its primary function consists of certifying persons educated in various fields of science and technology, the Board argues that its property falls within the statutory exemption for property used for "mechanical" purposes. Further, the Board argues, the respondents have failed to overcome the presumption of constitutionality that must be accorded to legislative enactments (*Livingston v. Ogilvie* (1969), 43 Ill. 2d 9, 12), and have failed to sustain their burden of showing that the statute is invalid (*Pozner v. Mauck* (1978), 73 Ill. 2d 250, 255).

However, statutes granting tax exemptions must be construed strictly in favor of taxation (*Coyne Electrical School v. Paschen* (1957), 12 Ill. 2d 387, 390), and the party claiming an exemption has the burden of proving clearly and conclusively that the property in question falls within both the constitutional authorization and the terms of the statute under which the exemption is claimed (*Coyne Electrical School v. Paschen* (1957), 12 Ill. 2d 387, 390; *People ex rel. Kelly v. Avery Coonley School* (1957), 12 Ill. 2d 113, 115). In the present case, the Board has not met its burden.

Article IX, section 6, of the 1970 Illinois Constitution provides in pertinent part:

"The General Assembly by law may exempt from taxation only *** property used exclusively for *** school, religious, cemetery and charitable purposes." (Ill. Const. 1970, art. IX, sec. 6.)

The language used to describe property that is eligible for exemption with appropriate legislation does not authorize an exemption for "mechanical purposes." In *International College of Surgeons v. Brenza* (1956), 8 Ill. 2d 141, this court struck down a legislative exemption for property used for "philosophical" purposes. Similarly, we hold an exemption for property used for "mechanical" purposes invalid because such an exemption exceeds the scope of article IX, section 6, of our constitution. Even if "mechanical purposes" is deemed a subcategory of "scientific purposes," the exemption is still invalid because the constitution does not authorize an exemption for property used for scientific purposes, either.

Finally, the Board argues that denying its claim to a tax exemption violates equal protection because it is similarly situated to other organizations that have been granted tax-exempt status. However, in the cases cited by the Board, the court found that the taxpayers were entitled to a constitutionally authorized statutory exemption. In this respect, the Board is not similarly situated to those organizations, and its equal protection argument must therefore fail.

For the foregoing reasons, the judgment of the circuit court is affirmed.

*Judgment affirmed.*

CHIEF JUSTICE CLARK, dissenting:

As an institution of justice in a government of laws and not men, this court derives its respect from the soundness of reasoning and correct application of precedent in its decisions. The majority holds that the Board does not qualify for a tax exemption for property used

for school or "other educational purposes" (Ill. Rev. Stat. 1983, ch. 120, par. 500.1). I cannot agree with today's decision, for it rests upon a foundation that bristles with obvious and profound analytical error.

In my judgment the Board stands in a position analogous to the plaintiff in *Association of American Medical Colleges v. Lorenz* (1959), 17 Ill. 2d 125, where this court held that the statutory exemption for property used for school or other educational purposes was satisfied. The Board, like the plaintiff in *American Medical Colleges,* utilizes its property to develop and improve educational standards in its field and curricula at various colleges and universities in Illinois, publishes newsletters, administers examinations, and maintains a library.

Notwithstanding the substantial similarity in educational activities performed by the Board and the plaintiff in *American Medical Colleges,* the majority states that the Board has misplaced its reliance on *American Medical Colleges.* According to the majority, *American Medical Colleges* does not support the Board's position because "[t]he holding in that case was that an organization that is created by tax-exempt institutions that join together to function more efficiently is also entitled to an exemption." 112 Ill. 2d at 546.

Although the holding of *American Medical Colleges* is quite clear, it certainly is not to be found in today's majority opinion. The majority's recital of the rule of law purportedly announced by this court in *American Medical Colleges* is a misstatement of the true holding and law of that case. Contrary to the majority's assertion, there is no discussion whatsoever in *American Medical Colleges* regarding the tax status of the organizations that created the plaintiff. Nowhere in the opinion did this court state that the plaintiff was entitled to tax exemption because its creators were tax-exempt institutions. In fact the opinion never even mentions who cre-

ated the plaintiff.

In *American Medical Colleges,* this court focused not upon the taxing status of the entities creating or sponsoring the plaintiff, but upon the use made of the property in dispute. In rejecting the contention that tax exemption should be limited to property where classes are conducted or courses are taught, this court plainly stated: "The test is use, not ownership or proximity to classroom work." (17 Ill. 2d 125, 128). Recognizing that tax-exemption provisions must be strictly construed in favor of taxation (*Coyne Electrical School v. Paschen* (1957), 12 Ill. 2d 387, 390), the court concluded that there could be no doubt that the plaintiff's services in improving educational standards satisfied the property-use test. 17 Ill. 2d 125, 129.

In underscoring the fact that plaintiff was not precluded from tax exemption for not offering a course of study, the court observed that the "functions to which plaintiff's property is devoted are identical to those which would afford exemption *if* conducted separately by the member institutions." (Emphasis added.) (*Association of American Medical Colleges v. Lorenz* (1959), 17 Ill. 2d 125, 129.) The court did not, however, find that the plaintiff's member institutions were tax exempt. That question was not even before the court. Too, it is not before this court to decide, as it does in a single conclusory sentence, that "the organizations that sponsor the Board are not themselves tax exempt." (112 Ill. 2d at 546.) That the inquiry focuses solely on the functions for which the organization uses its property, without regard to its sponsors, is again evident in this court's statement in *American Medical Colleges* that "[w]here the functions themselves qualify for exemption it does not matter that they are performed by a separate organization [*e.g.,* the plaintiff] rather than by the respective member institutions." (17 Ill. 2d 125, 129.) Further, the

majority's conclusion that the Board "cannot claim an exemption for activities that would not entitle its sponsors to an exemption" (112 Ill. 2d at 546) flies in the face of the fact that virtually the same activities qualified the plaintiff in *American Medical Colleges* for a tax exemption for property used for educational purposes.

Citing *Milward v. Paschen* (1959), 16 Ill. 2d 302, 308, the majority also concludes that because the State neither licenses nor registers safety professionals, the Board's activities do not " ' "substantially lessen[ ] what would otherwise be a governmental function and obligation." ' " (112 Ill. 2d at 546.) However, the majority fails to acknowledge that this court eschewed any application of the aforementioned test in *American Medical Colleges*, which, in *full* context, previously required that a private organization provide "*a course of study* which substantially lessen[ed] what would otherwise be a governmental function and obligation." (Emphasis added.) (*Coyne Electrical School v. Paschen* (1957), 12 Ill. 2d 387, 392.) Clearly, this is no longer a prerequisite for exemption since *American Medical Colleges* holds that an organization which otherwise satisfies the property-use test need not offer a course of study.

For the foregoing reasons, I respectfully dissent.