AMERICAN COLLEGE OF CHEST PHYSICIANS, Plaintiff-Appellant, v. THE DEPARTMENT OF REVENUE *et al.*, Defendants-Appellees.

First District (3rd Division)   No. 1—89—1253

Opinion filed July 18, 1990.—Modified on denial of
rehearing September 12, 1990.

Neistein, Richman, Hauslinger, Young & Rosen, Ltd., of Chicago (Harry A. Young, Jr., Alan Rosen, and Marcia Topper Wolf, of counsel), for appellant.

Neil F. Hartigan, Attorney General, of Springfield (Robert J. Ruiz, Solicitor General, and Daniel N. Malato, Assistant Attorney General, of Chicago, of counsel), for appellees.

JUSTICE WHITE delivered the opinion of the court:

Plaintiff, the American College of Chest Physicians, appeals from an order of the circuit court affirming the finding of defendant, the Illinois Department of Revenue (Department), that real property owned by plaintiff and located at 911 Busse Highway in Park Ridge, Illinois, was not exempt from taxation for the year 1986. Plaintiff argues that it is entitled to a property tax exemption under sections 19.1 and 19.7 of the Revenue Act of 1939 (Ill. Rev. Stat. 1985, ch. 120, pars. 500.1, 500.7).

In 1974, the Department exempted plaintiff's property from taxation. The property remained exempt for the following 11 years. In 1987, the Cook County Board of Appeals approved plaintiff's application for a tax exemption for the year 1986. However, on August 10,

1987, the Department reversed the Board's decision on the ground that the property was not in exempt ownership or use.

Plaintiff requested a formal hearing on the Department's denial of its request for an exemption. Dr. Alfred Soffer, plaintiff's executive director, was the only witness called at the hearing. Soffer testified that plaintiff is an international, not-for-profit medical society for 13,000 members in the United States, Canada, and overseas. Soffer stated that plaintiff's major purpose is to provide continuing education to the practicing specialist in heart and lung disease and to physicians who treat patients with heart and lung diseases. Soffer further stated that plaintiff was the primary source of post-graduate education in pulmonary medicine.

Soffer testified that in 1986 one-third of plaintiff's funds came from membership dues; one-third from fees for its courses and annual meeting; and one-third from advertising in *Chest*, plaintiff's monthly journal. Soffer stated that plaintiff also received $500,000 in grants.

Soffer testified that the building in Park Ridge was staffed by 42 full-time employees and that the employees were divided into four administrative categories: seven were employed in the education division, 11 in the publications division, three in the convention and audiovisual division, and 21 in the membership division. The building also housed a scientific library staffed by a full-time librarian. The library contained the major heart and lung journals in the world, textbooks relating to heart and lung disease, and facilities for computerized data bases for the National Library of Medicine. Soffer stated that the library received requests from laymen and physicians and members and nonmembers all over the world and that there was no charge for library research.

In response to a question by the administrative law judge, Soffer stated that he did not know what number of laypersons used the library and he indicated that the library was primarily used by plaintiff's staff to respond to inquiries in letters and phone calls. When asked whether people came to the building to use the books, Soffer replied that the books were for staff use in responding to inquiries and performing research for high schools, schools, physicians and laymen. When asked if a layperson would be prohibited from going to the library to look at the books, Soffer stated

"No, no. It's not a prohibition. It's just that it's a national—it's a national responsibility, and I and my staff usually we are asked questions but not from Illinois. However, its available. There is—it's not—we would welcome all visitors.

And we'd like to expand this service. Because especially with

our own computer base soon, I would hope we would be able to offer that availability."

Soffer testified that plaintiff also maintained a video tape library, and that video tapes from the library were rented to the public at the cost of mailing. In addition, plaintiff produced audio tapes on the diagnosis, treatment, and prevention of heart and lung diseases, which were available for purchase by physicians and members of the public who were not physicians.

Soffer testified that plaintiff maintained an educational fund, created by voluntary donations from plaintiff's members, and that each year three $18,000 grants were "provided by industry." Soffer also testified that plaintiff provided $70,000 a year for a teaching research grant.

Soffer further testified that each year plaintiff offered between 12 and 22 continuing medical education courses for physicians. The courses lasted from two to five days and the standard fee for a three-day course was $300. The courses were not conducted at the building in Park Ridge, but were presented at hospitals and medical centers across the country. The courses included lectures and workshops, and class sizes ranged from 100 to 1,000 students. Although the majority of the courses offered were for physicians, plaintiff also offered at least one course a year for nurses and allied health professionals, such as respiratory therapists.

Soffer testified that the State of Illinois did not offer any continuing medical education. Soffer also testified that, while continuing medical education was necessary for continued licensure and certification in 20 States, it was not required in the State of Illinois.

Following the hearing, the administrative law judge concluded that plaintiff did not qualify as a school or a charitable organization. The Department adopted the law judge's conclusions, and plaintiff's request for a property tax exemption was denied.

Plaintiff filed a complaint in administrative review with the circuit court of Cook County. Following a hearing, the court affirmed the Department's decision. The court held plaintiff's property did not qualify for an educational property tax exemption because the courses offered by plaintiff were not mandated by the State of Illinois, because the courses did not relieve any State burden, and because the State did not have any responsibility to educate physicians on new techniques in chest medicine.

The court found that plaintiff existed primarily for the education of its dues-paying members and that, while the courses offered passed down some indirect benefit to the members' patients, this did not con-

stitute a direct economic benefit to the State. The court also found that plaintiff did not qualify for a charitable exemption because the property was not used to relieve the public from disease, suffering, or constraint, or for some other activity which lessened the financial burden on the State. This appeal followed.

■■ ■ Section 19.1 of the Revenue Act (Ill. Rev. Stat. 1985, ch. 120, par. 500.1) provides that all property of schools used for school purposes is exempt from taxation. In *Coyne Electrical School v. Paschen* (1957), 12 Ill. 2d 387, 146 N.E.2d 73, the supreme court stated that two things are necessary to qualify property owned by a private institution for exemption from tax: (1) a course of study which fits into the general scheme of education founded by the State and supported by public taxation; and (2) a course of study which substantially lessens what would otherwise be a governmental function and obligation. (*Coyne*, 12 Ill. 2d at 392-93.) The burden of proving the right to exemption is upon the party seeking it, and in determining whether property is included within the scope of an exemption, all facts are to be construed and all debatable questions resolved in favor of taxation. *Board of Certified Safety Professionals of the Americas, Inc. v. Johnson* (1986), 112 Ill. 2d 542, 494 N.E.2d 485; *Highland Park Hospital v. Department of Revenue* (1987), 155 Ill. App. 3d 272, 507 N.E.2d 1331.

In the present case, plaintiff points out that in 1986, section 5a of the Medical Practice Act (Ill. Rev. Stat. 1985, ch. 111, par. 4411a) provided that the Department of Registration and Education "shall promulgate requirements of continuing education for persons licensed under this Act" and that regulations requiring continuing medical education had been proposed pursuant to this section. Plaintiff also points out that in 1986, amendments to the ̄Medical Practice Act requiring continuing medical education had been proposed. Plaintiff acknowledges that the proposed regulations were never enacted and were subsequently withdrawn. However, plaintiff contends that the proposed regulations and the proposed amendments indicate that in 1986, State policy mandated continuing medical education. Plaintiff therefore argues that it satisfied the first requirement that the course of study offered fit into the general scheme of education by the State.

Plaintiff further argues that because State policy required continuing medical education, plaintiff's courses substantially lessened the tax burden on the public by providing educational training that, otherwise, the State would have to furnish. Thus, plaintiff contends that it also satisfied the second requirement that its course of study substantially lessen a governmental function and obligation.

In support of its contentions, plaintiff relies on *Illinois College of Optometry v. Lorenz* (1961), 21 Ill. 2d 219, 171 N.E.2d 620, and *Association of American Medical Colleges v. Lorenz* (1959), 17 Ill. 2d 125, 160 N.E.2d 763, two cases in which the supreme court found that the plaintiff organizations qualified for educational property tax exemptions. Plaintiff argues that its activities are similar to those of the organizations in the above-cited cases and claims that, therefore, a similar conclusion must be reached in this case.

We disagree with plaintiff's arguments that it satisfies the requirements for exemption set forth in *Coyne*, and we find that both *Illinois College of Optometry* and *Association of American Medical Colleges* are distinguishable.

In *Illinois College of Optometry*, that school was held to be exempt from taxation because the courses taught there duplicated those taught by the tax-supported University of Illinois and its medical school. Although the supreme court stated that there was no requirement that the courses offered by a private school duplicate the program of a public school to qualify for a tax exemption, the court also stated that the course of study provided must fit within the general scheme of education provided in tax-supported schools. (*Illinois College of Optometry*, 21 Ill. 2d 219.) Because the courses taught at the College of Optometry were "equally as comprehensive and exacting" as those taught in State-supported universities and were required before one could become qualified to practice optometry, the court concluded that they fit into the general scheme of education established by the State and substantially lessened the tax burden by providing instruction that otherwise would be provided at government expense. 21 Ill. 2d at 223.

In *Association of American Medical Colleges*, plaintiff was a not-for-profit corporation whose members included medical schools throughout the country. The Association's functions included publishing a directory containing admission requirements and other information about member schools; sponsoring admission tests; performing placement functions; and appraising the curricula of medical schools and colleges. In allowing the tax exemption for the Association's property, the supreme court noted that the functions to which the property was devoted were identical to those that would afford exemption if conducted separately by the member institutions. The court concluded that where the functions themselves qualify for exemption, it did not matter that they were performed by a separate organization rather than by the respective members. *Association of American Medical Colleges*, 17 Ill. 2d at 129.

In the present case, plaintiff did not function on behalf of tax-exempt entities, as did the Association of American Medical Schools; nor did it provide the comprehensive course of study presented by the College of Optometry. While plaintiff's executive director testified that plaintiff was the primary source of post-graduate education in pulmonary medicine, he also testified that plaintiff's courses lasted only two to five days and that they were not required in order to be licensed in Illinois.

■ We are not persuaded by plaintiff's argument that its courses fit within the general scheme of education in 1986 because in that year the Department of Registration had proposed regulations requiring continuing medical education. As we stated above, in determining whether property is included within the scope of an exemption, all facts are to be construed in favor of taxation. In construing the facts in this case, we note that the Department's proposed regulations were never enacted and that in 1986 there was no Illinois law requiring continuing medical education. It follows that if there was no requirement of continuing medical education, there was no burden on the State to furnish such education and, thus, no burden for plaintiff to lessen. Accordingly, we conclude that plaintiff's property does not fall within the statutory exemption for property used for schools or other educational purposes.

We now turn to plaintiff's contention that its activities qualify it for a charitable tax exemption under section 19.7 of the Revenue Act. Section 19.7 provides an exemption from tax for all property of institutions of public charity. Ill. Rev. Stat. 1985, ch. 120, par. 500.7.

■ In *Methodist Old Peoples Home v. Korzen* (1968), 39 Ill. 2d 149, 233 N.E.2d 537, the supreme court enunciated the following guidelines and criteria to be applied in determining whether a use is for charitable purposes: (1) the use is for the benefit of an indefinite number of persons, persuading them to an educational or religious conviction, for their general welfare—or in some way reducing the burdens on government; (2) the charitable institution has no capital, capital stock, or shareholders, earns no profits or dividends, but rather derives its funds mainly from public and private charity and holds them in trust for the objects and purposes expressed in its charter; (3) the charitable institution dispenses charity to all who need and apply for it, does not provide gain or profit in a private sense to any person connected with it, and does not appear to place obstacles of any character in the way of those who need and would avail themselves of the charitable benefits it dispenses; (4) the statements of the agents of an institution and the wording of its governing legal docu-

ments evidencing an intention to use its property exclusively for charitable purposes do not relieve such institution of the burden of proving that its property actually and factually is so used; and (5) the term "exclusively used" means the primary purpose for which property is used and not any secondary or incidental purpose. 39 Ill. 2d at 157.

After applying these guidelines to facts in the present case, we conclude that plaintiff does not qualify for a charitable tax exemption.

■ To meet the first of the guidelines, it must be established that the benefits accrued to mankind directly; it is not sufficient that incidental benefits may come to the public as a result of the property's use. (*International College of Surgeons v. Brenza* (1956), 8 Ill. 2d 141, 133 N.E.2d 269.) Although plaintiff argues that the public was directly benefitted by its courses, it seems clear that plaintiff's activities benefitted a particular class of people, *i.e.*, its members and other doctors who took plaintiff's courses, and any benefit accruing to the general public was indirect. Further, as we stated above, plaintiff's activities did not reduce the burdens of government, because there was no burden on the government to provide continuing medical education. Thus we find that plaintiff failed to meet the first guideline.

■ Turning to the second guideline, it appears that plaintiff was a not-for-profit corporation with no capital stock or shareholders. However, plaintiff's executive director testified that one-third of plaintiff's income was derived from membership dues, one-third from the courses and annual meeting, one-third from advertising, and an additional $500,000 a year from grants. The income and expense statements included in the record reveal that in fiscal year 1986, plaintiff derived $1,424,931 in membership dues, $998,521 from its courses and annual meeting, and $1,851,178 from advertising. Thus, it is clear that the $500,000 in grants was not the main source of plaintiff's funds.

■ We also find that plaintiff did not meet the third guideline that charity be dispensed to all who need and apply for it with no obstacles put in the way of those who need and would avail themselves of plaintiff's benefits. Plaintiff argues that it met this guideline through the fellowships and grants it provided for research, its teaching and training, and its library whose publications and tapes were available to anyone.

We have already held that plaintiff's teaching and training benefitted only a limited class of people. We now hold that there is no evidence that plaintiff's fellowships and grants or its library provided benefits to the general public.

Under the fourth guideline, the statements of the agents of an in-

stitution do not relieve the institution of the burden of proving that it actually used its property for an exclusively charitable purpose. In the present case, the only evidence that plaintiff's library was available for use by the public was the statement of plaintiff's director. When plaintiff's director was questioned about the public's use of plaintiff's library, he was unable to state what number of laypersons used the library; he stated that the library was used primarily by plaintiff's staff in responding to inquiries; and his reply to the hearing officer's question of whether laypersons would be allowed to visit the library to examine plaintiff's books, at best, could be described as equivocal.

The director's testimony concerning plaintiff's grants and fellowships was similarly ambiguous. He stated that five grants were awarded annually: three of these were provided by "industry" and a fourth in the amount of $70,000 was provided by plaintiff itself; no details were given concerning the fifth grant.

■■ The burden of proving the right to an exemption is upon the party seeking it and a plaintiff meets this burden by demonstrating that charity is the primary purpose for which the property is used. (*Board of Certified Safety Professionals of the Americas, Inc. v. Johnson*, 112 Ill. 2d at 547; *Highland Park Hospital v. Department of Revenue*, 155 Ill. App. 3d at 283.) In the present case, the testimony of plaintiff's director concerning plaintiff's fellowships and grants and the public's use of plaintiff's library did not establish with the required conclusiveness and clarity that the primary purpose for which plaintiff's property was used was a charitable one. See *Coyne Electrical School v. Paschen*, 12 Ill. 2d at 401.

In arguing that it is entitled to a charitable exemption, plaintiff claims that its situation is factually indistinguishable from that of the plaintiff in *American College of Surgeons v. Korzen* (1967), 36 Ill. 2d 340, 227 N.E.2d 7. We disagree.

In *American College of Surgeons*, the supreme court held that although many of the college's programs were attended primarily by members of the medical profession, the college made its benefits available to the public to the greatest degree possible and that the college's activities relieved, to some extent, the burden on the State to advance the interest of its citizens. (36 Ill. 2d at 348.) Unlike the present case, there was evidence in *American College of Surgeons* that the library and museum operated by the college were used by the public; that the college formulated standards for and inspected and accredited State, municipal, and private hospital facilities at no charge; and that the college conducted programs for the education of doctors, laymen, hospital administrators, and the general public.

Here, plaintiff took no part in the accreditation of hospitals; its programs were directed toward its members and other doctors; and as we stated above there was no clear and convincing evidence that plaintiff's facilities were used by the general public. Accordingly, we find that plaintiff has failed to meet its burden of establishing that it is entitled to a charitable tax exemption.

For the foregoing reasons, we find that plaintiff did not qualify for an educational property tax exemption or a charitable exemption and, therefore, we affirm the judgment of the circuit court of Cook County.

Affirmed.

RIZZI and FREEMAN, JJ., concur.