WINONA SCHOOL OF PROFESSIONAL PHOTOGRAPHY, Plaintiff-Appellant, v. THE DEPARTMENT OF REVENUE, Defendant-Appellee.

First District (1st Division)   No. 1—88—3385

Opinion filed March 18, 1991.—Rehearing denied May 7, 1991.

McBride, Baker & Coles and Vedder, Price, Kaufman & Kammholz, both of Chicago (Paul D. Frenz, Henry S. Allen, and William F. Walsh, of counsel), for appellant.

Roland Burris, Attorney General, of Springfield (Robert J. Ruiz, Solicitor General, and William H. London, Assistant Attorney General, of Chicago, of counsel), for appellee.

PRESIDING JUSTICE MANNING delivered the opinion of the court:

The appellant, Winona School of Professional Photography (hereinafter Winona), is an Illinois not-for-profit corporation wholly owned by the Professional Photographers of America, a trade association. Since 1984, Winona has operated as a private photography school out of a facility in Mt. Prospect, Illinois. In March 1985 Winona applied for a real estate tax exemption that was denied by the Illinois Department of Revenue (hereinafter Department) on October 31, 1985.

Thereafter, Winona filed a request for a formal hearing for review of the Department's denial, and an administrative hearing was held in May 1986. Winona presented several witnesses at the hearing: Robert Evans, a private consultant and professor of education at University of Illinois at Champaign-Urbana; William Hazard, a professor at Northwestern University; Ed Delmastro, an instructor in the photography technical program within the School of Technical Careers at Southern Illinois University (Southern) and instructor at Winona; Robert Becker, chief executive officer at Winona; Elisabeth Landis, an employee at Lexecon; and Philip Kummerer, director of finance at Winona. Mr. Evans and Mr. Hazard, who were recognized as expert

witnesses, testified that although technical and vocational education in Illinois effectively began in 1917 during World War I, it has only recently become a part of the scheme of post-secondary public education in the State and that Winona offers a course of study which currently fits in that scheme. Evans testified that there are about 47 community colleges, each offering a substantial vocational and technical program. Additionally, since 1965, which marks the commencement of the development of community colleges, technical institutes have been established at Southern Illinois University and at the University of Illinois. Evans further testified that technical education within certificate programs at public institutions is designed exclusively to provide technical skills and that Winona duplicates the best of Illinois' public technical programs.

Professor Hazard testified that the photography programs at several colleges parallel the program at Winona and that there is no difference in the educational objectives of the schools. Hazard prepared a chart that compared Winona's offerings with various State-supported photography programs, defined as a "sequence of courses" that build one upon the other.

Becker testified that Winona offers courses in management, marketing and sales as well as photography courses and that the course of instruction is sequential. The average length of a class at Winona is one week; however, a one-week course at Winona provides as many hours of instruction as semester courses offered by public institutions because the courses begin at 8 in the morning and last into the night, each day. Becker stated that the teaching technique at Winona is a combination of lectures and hands-on instruction, and the school offers recognition in the form of a certificate of completion, rather than a degree.

Delmastro testified that the course content of the Winona program is essentially the same as the skills and training that would be required to complete the Photographic Production Technology (hereinafter PPT) program at Southern. A student who has completed a course at Winona may obtain credit or a waiver from taking a required course from Southern.

Following the hearing, the administrative law judge found that Winona's witnesses' testimony was of "dubious value," yet she concluded that Winona qualified as a school and recommended tax exemption. The Department declined to follow the law judge's recommendation, finding that Winona failed to prove it was a school and denied Winona's claim for a property tax exemption.

Winona then filed a complaint for administrative review in the circuit court of Cook County on May 8, 1987. Thereafter, Winona's claim for an exemption for 1985 was consolidated into the 1984 case. The circuit court affirmed the decisions of the Department denying Winona's applications for exemptions for 1984 and 1985.

On appeal, Winona asserts that its property is exempt from taxation because it operates a school within the meaning of section 19.1 of the Revenue Act of 1939 (hereinafter Act) (Ill. Rev. Stat. 1985, ch. 120, par. 500.1). The Department contends that the issue is properly phrased as whether the trial court properly affirmed the Department's denial of Winona's request for exemption on the ground that such denial was not against the manifest weight of the evidence.

We initially preface our discussion with the observation that no disputed testimony or documentary evidence was presented at the hearing. Winona's witnesses testified as to how they believed Winona fit into the definition of a school, and although their testimony was characterized as "dubious," it was not challenged for truthfulness or accuracy.

■ Because the relevant facts are uncontradicted, "[t]he issue before us is not whether the Department's decision was against the manifest weight of the evidence. When the facts upon which a decision of tax exempt status rests are undisputed, whether property is exempt is a question of law." (*Cook County Masonic Temple Association v. Department of Revenue* (1982), 104 Ill. App. 3d 658, 660, 432 N.E.2d 1240.) Thus, the decision as to whether the property is exempt "depends solely upon an application of the appropriate legal standard to the undisputed facts." *Illinois Central Gulf R.R. Co. v. Department of Local Government Affairs* (1983), 95 Ill. 2d 111, 129, 447 N.E.2d 315.

■ Article IX, section 6, of the 1970 Illinois Constitution provides in relevant part:

"The General Assembly by law may exempt from taxation only *** property used exclusively for *** school, religious, cemetery and charitable purposes." (Ill. Const. 1970, art. IX, §6.)

Accordingly, pursuant to section 19.1 of the Act, the legislature has exempted "all property of schools, *** including the real estate on which the schools are located and any other real property used by such schools exclusively for school purposes." Ill. Rev. Stat. 1985, ch. 120, par. 500.1.

■ As a result, the courts have strictly construed statutes granting tax exemptions (*Telco Leasing, Inc. v. Allphin* (1976), 63 Ill.

2d 305, 347 N.E.2d 729), and all questions regarding the tax exempt status of property are resolved in favor of taxation. (*Board of Certified Safety Professionals of the Americas, Inc. v. Johnson* (1986), 112 Ill. 2d 542, 494 N.E.2d 485; *Highland Park Hospital v. Department of Revenue* (1987), 155 Ill. App. 3d 272, 507 N.E.2d 1331; *Illinois Cereal Mills, Inc. v. Department of Revenue* (1976), 37 Ill. App. 3d 379, 346 N.E.2d 69.) Moreover, the burden of proving the right to a property tax exemption is upon the person seeking it (*Milward v. Paschen* (1959), 16 Ill. 2d 302, 308, 157 N.E.2d 1), and he or she must prove by clear and conclusive evidence the right to an exemption. (*People ex rel. Kelly v. Avery Coonley School* (1957), 12 Ill. 2d 113, 115, 145 N.E.2d 80.) Each individual claim for tax exemption must be determined from the facts presented. *People ex rel. County Collector v. Hopedale Medical Foundation* (1970), 46 Ill. 2d 450, 264 N.E.2d 4; *MacMurray College v. Wright* (1967), 38 Ill. 2d 272, 230 N.E.2d 846; *Turnverein "Lincoln" v. Board of Appeals* (1934), 358 Ill. 135, 192 N.E.780.

■ The determination whether a private institution is a school for tax exemption purposes is based upon a two-part test enumerated by the Illinois Supreme Court in *Ray Schools-Chicago-Inc. v. Cummins* (1957), 12 Ill. 2d 376, 146 N.E.2d 42, and refined in the companion case *Coyne Electrical School v. Paschen* (1957), 12 Ill. 2d 387, 146 N.E.2d 73. In *Coyne*, the court enunciated:

"On the basis of the foregoing decisions it is manifest that two things are necessary to qualify a private institution for tax exemption as a school: first, a course of study which fits into the general scheme of education founded by the State and supported by public taxation; second, a course of study which substantially lessens what would otherwise be a governmental function and obligation." (*Coyne*, 12 Ill. 2d at 392.)

The court later elaborated in *Illinois College of Optometry v. Lorenz* (1961), 21 Ill. 2d 219, 171 N.E.2d 620, that a private school need not duplicate the program of a public school in order to gain tax exemption; rather, its course of study need only fit the general scheme of education provided in tax-supported schools.

It is in reliance on *Lorenz* that Winona urges its course of study fits into the general scheme of education currently provided in public institutions. Winona argues that the Public Community College Act (Ill. Rev. Stat. 1985, ch. 122, par. 101–1 *et seq.*) obligates public community colleges in Illinois to provide courses in technical fields and that the course of study offered at Winona compares to the courses of study offered at the various technical programs at State-supported in-

stitutions. Specifically, Winona contends that its (1) curriculum, (2) methods and intensity of instruction and (3) scope and end results of operations (see *Lorenz*, 21 Ill. 2d 219) qualify it as a "school" within the current ordinary and accepted meaning of the term.

■ We disagree with Winona's argument because the record below demonstrates that it fails to satisfy the requirements for property tax exemptions set forth in *Coyne*. Moreover, we find that Winona's reliance upon *Lorenz* is misplaced. In reaching our conclusion, we find the reasoning advanced in the recent decision of *American College of Chest Physicians v. Department of Revenue* (1990), 202 Ill. App. 3d 59, 559 N.E.2d 774, to be both persuasive and dispositive here. In distinguishing *Lorenz* from its factual scenario, this court in *American College of Chest Physicians* stated:

> "[T]hat school [Illinois College of Optometry] was held to be exempt from taxation because the courses taught there duplicated those taught by the tax-supported University of Illinois and its medical school. *** [T]he courses taught at the College of Optometry were 'equally as comprehensive and exacting' as those taught in State-supported universities and were required before one could become qualified to practice optometry ***.
> ***
> In the present case, plaintiff did not *** provide the comprehensive course of study presented by the College of Optometry. While plaintiff's executive director testified that plaintiff was the primary source of post-graduate education in pulmonary medicine, he also testified that plaintiff's courses lasted only two to five days and that they were not required in order to be licensed in Illinois." *American College of Chest Physicians*, 202 Ill. App. 3d at 65-66.

■ In the present case, Winona similarly did not provide the comprehensive course of study presented by the College of Optometry. Its witnesses testified that although there were a few two-week courses and several weekend courses, the average length of a class at Winona was one week. Witnesses presented catalogs of Winona and those of other institutions to show similar course content. However, Winona did not offer any degrees or any particular general course of study. Students did not follow a prescribed course of study and were not given a grade; however, if they completed a course, they were given a certificate. As a wholly owned subsidiary of the Professional Photographers of America, a trade association, in 1984 Winona received about half of its funds from the association's members or their equipment suppliers, and one-half from tuition, of which 60% was re-

ceived from association members. Although some of Winona's courses could be transferred to other educational institutions for course credit, it offered the majority of its courses only in photography and related subjects. Winona was not accredited in 1984. Winona did not offer systematic instruction in useful branches of learning by methods common to institutions of learning. Neither did it demonstrate that it was the primary source of post-graduate education in photographic course of instruction or that its instruction substantially lessened the burden of taxation occasioned by the public school system. See generally *Johnson*, 112 Ill. 2d 542 (where the court held that a nonprofit corporation which issued certificates to safety professionals who passed its examinations was not a tax exempt organization).

■ Moreover, Winona's proposition that it provided training that would otherwise have to be furnished by the government is equally without merit. Winona urges because the Public Community College Act obligates technical education in the State, it lessens this burden by providing courses in the technical field of photography which thereby reduces the State's tax burden of maintaining public photographic education programs. The Public Community College Act provides in pertinent part:

"101—2. Definitions

* * *

(e) 'Comprehensive community college program': A program offered by a community college which includes (1) courses in liberal arts and sciences and general education; (2) adult education courses; and (3)courses in occupational, semi-technical or technical fields *leading directly to employment. At least 15% of all courses taught must be in fields leading directly to employment,* one-half of which courses to be in fields other than business education." (Emphasis added.) Ill. Rev. Stat. 1985, ch. 122, par. 101—2(e).

While the Public Community College Act provides for the establishment of technical programs in community colleges, it also mandates: (1) a comprehensive community college program, where such program includes courses in liberal arts and sciences and general education, in adult education, *and* in occupational, semi-technical or technical fields and (2) that the program lead directly to employment. Unlike *Lorenz*, Winona has failed to establish that its course of instruction is required by individuals seeking to gain employment in the photography field or that its course of instruction leads directly to employment in the photographic field. Neither does the record show that it offers any courses in general education or adult education.

■ Accordingly, in construing the facts in this case, we conclude that Winona neither fits into the general scheme of education founded by the State as set forth in *Coyne* and the Public Community Act nor substantially lessens a governmental function and obligation. Thus, its property does not fall within the statutory exemption for property used for school or other educational purposes.

For the above reasons, we affirm the judgment of the circuit court of Cook County.

Affirmed.

CAMPBELL and O'CONNOR, JJ., concur.