THE YALE CLUB OF CHICAGO, Plaintiff-Appellant, v. THE DEPART-
MENT OF REVENUE, Defendant-Appellee.

First District (4th Division)   No. 1—90—1893

Opinion filed May 9, 1991.—Rehearing denied June 19, 1991.

Metzger & Associates, Ltd., of Chicago (Donald L. Metzger, of counsel), for appellant.

Neil F. Hartigan, Attorney General, of Springfield (Robert J. Ruiz, Solicitor General, and Susan Frederick Rhodes, Assistant Attorney General, of Chicago, of counsel), for appellee.

JUSTICE LINN delivered the opinion of the court:

In this action for administrative review, plaintiff, the Yale Club of Chicago (YCC), appeals from an adverse decision by the Illinois Department of Revenue (Department), regarding the YCC's status as an educational or charitable organization entitled to a purchaser's sales tax exemption under Illinois law. Ill. Rev. Stat. 1987, ch. 120, par. 441(b).

The trial court entered judgment confirming the Department's denial of the sales tax exemption. On appeal, YCC contends that the decision of the Department is contrary to the law and the manifest weight of the evidence.

We affirm.

BACKGROUND

The YCC is an Illinois not-for-profit organization incorporated to promote the welfare of Yale University (University) in Connecticut by assisting in the recruitment of Chicago-area students; raising funds for scholarships; and sponsoring programs in the Chicago area designed to foster continuing support for Yale on the part of its alumni. The organization has no capital, capital stock, or shareholders, and its control and management are vested in an uncompensated board of directors.

The articles of incorporation of the YCC include a statement that the general purposes of the organization shall be exclusively charitable and educational within the meaning of section 501(c)(3) of the Internal Revenue Code. (26 U.S.C. §501(c)(3) (1988).) The bylaws state the principles and objectives of the YCC:

"The Club is dedicated to the promotion of the welfare of Yale University, the preservation of its traditions of excellence in education and service, and the advancement of its influence and stature in the metropolitan area of Chicago, Illinois. The Club subscribes to the belief that an active and vigorous local alumni association is a primary vehicle to advance such principles."

Philip Moriarty was the only witness to testify during the administrative hearing on the YCC's status as an educational or charitable organization. He has been with the YCC since its incorporation in 1978, serving at different times as president, director, and chairman of the alumni schools committee. According to his testimony, the YCC's operations fall into three categories: (1) activities of the alumni schools committee; (2) Yale-related events; and (3) fund raising for the Yale Club of Chicago Foundation.

One of the main purposes of the YCC is to interview and evaluate applicants to Yale. The alumni schools committee is set up to cover the greater Chicago area and uses 80 volunteer members, who are Yale alumni, to present information about Yale to high school students and parents at area high schools. Although Yale has a staff member from its admissions office assigned to cover Chicago, the University itself does not actively recruit or interview applicants. That function is filled by the YCC volunteers who conduct the interviews. The YCC does not make the decision whether a student will be accepted to attend Yale. While it does use guidelines prepared by the University for evaluating prospective students, the YCC does not act under the control and supervision of Yale.

Membership in the YCC is limited to Yale alumni or parents of the alumni, and current students. Members pay dues. The YCC sponsors events, such as lectures, concerts, and theatrical performances featuring Yale faculty, students, or other Yale-affiliated persons. Only YCC members are invited to these events, and they are charged a fee to cover costs of the event.

The membership dues and proceeds from the sponsored events pay for administrative expenses first. Any excess or operating profit is divided so that 20% goes to printing and postage for mailings to members. The balance goes to the Yale Club of Chicago Foundation, an organization with the sole purpose of raising funds for scholarships awarded to Chicago-area students of Yale.

On November 14, 1986, the YCC made a written request to the Department for a purchaser's sales tax exemption. On February 2, 1987, the YCC sent additional information in support of its request. On May 8, 1987, the Department responded in writing, stating that alumni associations generally do not qualify as tax-exempt purchasers. The Department also informed the YCC that it would consider any other additional information about its activities that the YCC might regard as pertinent.

The YCC appealed from the denial of its request for tax exemption. An administrative law judge presided over an evidentiary hear-

ing. At the conclusion of the hearing, the administrative law judge recommended the denial of the YCC's petition, stating:

"The taxpayer offered testimony that one of the organization's primary functions was to interview prospective students from the greater Chicago area.

After reviewing the testimony of the Taxpayer and reviewing the exhibits offered by the Taxpayer, the Administrative Law Judge is of the opinion the organization exists primarily for the benefit of its members and fails to meet the definition of exclusively charitable or educational as defined by Illinois courts."

The Department adopted the recommendation. The YCC filed suit for administrative review in the circuit court of Cook County. That court confirmed the Department's decision.

OPINION

■ The governing statute that allows certain organizations to purchase goods free of the State sales tax provides in relevant part as follows:

"A tax is imposed upon persons engaged in the business of selling tangible personal property at retail at the rate of 5% of the gross receipts from such sales of tangible personal property made in the course of such business, excluding, however, from those gross receipts *** (b) *** the proceeds of such sales to any governmental body, or to any corporation, society, association, foundation, or institution organized and operated exclusively for charitable, religious or educational purposes ***." Ill. Rev. Stat. 1987, ch. 120, par. 441.

■■ The burden is on the party seeking tax exemption, and all debatable questions are resolved in favor of taxation. (*E.g., Board of Certified Safety Professionals of the Americas, Inc. v. Johnson* (1986), 112 Ill. 2d 542, 547, 494 N.E.2d 485.) Where, as here, the relevant facts are uncontradicted, the issue is one of law and we need not consider whether the decision is contrary to the manifest weight of the evidence. (*Cook County Masonic Temple Association v. Department of Revenue* (1982), 104 Ill. App. 3d 658, 660, 432 N.E.2d 1240.) Therefore, the issue in the pending case is whether the YCC has established its entitlement to the exemption of subsection (b), under the law, as a corporation "organized and operated exclusively for charitable, religious or educational purposes."

The YCC asserts that it satisfies the statutory requirement under both the educational and charitable standards. In its challenge to the

Department's findings, the YCC argues that any social benefits accruing to its members are incidental and since the evidence does not support a finding of a "primarily social purpose," the decision should be reversed.

We do not agree that the failure of an organization to qualify for tax exemption necessarily means that it is primarily a social club, although a purely social club obviously would not qualify. By focusing on the dichotomy between "social" and "educational or charitable" purposes, the YCC distorts the issue. The administrative law judge did state that the YCC existed primarily for the benefits of its members but did not label those benefits as being social. The judge went on to hold that the YCC failed to meet the "definition of exclusively charitable or educational as defined by Illinois courts." As the courts have held when considering tax-exempt status for real property, the statutory term "exclusively used" refers to primary purpose rather than secondary or incidental purpose. *E.g., People ex rel. Nordlund v. Association of the Winnebago Home for the Aged* (1968), 40 Ill. 2d 91, 101, 237 N.E.2d 533.

## THE EDUCATIONAL EXEMPTION

■ To support its position that it qualifies for the purchaser's sales tax exemption based on its educational activities, the YCC cites several cases involving property tax exemptions. For example, in *Association of American Medical Colleges v. Lorenz* (1959), 17 Ill. 2d 125, 160 N.E.2d 763, the court held that an organization need not be a "school" itself to qualify for the educational purposes exemption and found a "real and substantial connection" between the activities of the Association of American Medical Colleges and the intent of the tax exemption for educational purposes. The association's activities included the accrediting of medical schools, giving admissions tests for medical schools, performing placement functions and evaluating curricula at medical schools, and compiling student information for use in developing programs of instruction. The court found that these functions were identical to those which would afford exemption if performed by each individual member of the association.

The YCC asserts that its activities, like those of the association in the above-cited case, served Yale University in ways that have a real and substantial connection with the educational purposes of Yale and would afford tax exemption if Yale performed them itself.

We do not believe that the recruiting and fund-raising activities of the YCC on behalf of one out-of-State private school are truly comparable to the activities of the American Association of Medical Colleges

on behalf of member schools throughout the nation. The association's efforts to set and maintain a standard of academic excellence for medical schools fit within the purpose of the tax exemption by improving educational standards and thus conferred a substantial benefit on the public. While the YCC's efforts to encourage top-quality students to attend Yale may maintain the educational standards of Yale, they do little to benefit the tax-paying public comprised of Illinois citizens.

■ This "public benefit" aspect of tax exemption has been long recognized in Illinois law. In the context of educational exemptions, the courts have used a two-part test to determine whether a particular private organization may be classified as a "school" and therefore claim exemption from taxes. (See *Illinois College of Optometry v. Lorenz* (1961), 21 Ill. 2d 219, 221, 171 N.E.2d 620 (holding that Illinois College of Optometry qualified for exemption under this test: (1) the institution must offer a course of study which fits into the general scheme of education established by the State, and (2) the course of instruction must lessen the tax burden of the public by providing an education which would otherwise have to be furnished by the State).) Not all educational-type not-for-profit organizations have been granted property tax exemptions based on this test. See *American College of Chest Physicians v. Department of Revenue* (1990), 202 Ill. App. 3d 59, 559 N.E.2d 774, *appeal denied* (1990), 135 Ill. 2d 553, 564 N.E.2d 834 (private institution providing services primarily to member doctors who specialized in diseases of the chest did not qualify for property tax exemption as a school even though it offered some courses of continuing medical education; organization did not lessen burden on the State to provide such education, since Illinois does not require continuing medical education); *Winona School of Professional Photography v. Illinois Department of Revenue* (1991), 211 Ill. App. 3d 565, (not-for-profit private photography school did not meet the test to qualify for the real estate tax exemption accorded to Illinois schools).

The YCC does not, of course, contend that it is a school but rather urges us to find that because Yale University is a school to which the exemption would apply, and the YCC is performing the same functions that Yale could, the exemption should apply to those activities performed on behalf of furthering Yale's educational objectives.

Such a functional analysis is not without appeal. Nevertheless, if we look only at the nature of the activity in the abstract and not whether the organization performing the activity can be characterized as a "school" within Illinois taxing law we may unwittingly expand the group of organizations who were intended to be given an exemp-

tion from taxation. (See *American College Testing Program, Inc. v. Forst* (Iowa 1970), 182 N.W.2d 826.) In that case, the Iowa Supreme Court denied an application by the American College Testing Program, Inc. (ACT Program), to be exempted from paying Iowa sales tax under a provision of law that exempted "educational institutions" from the tax. The court recognized that the ACT Program was a not-for-profit organization having the primary purpose of assisting college-bound high school students and its member colleges from 33 States to achieve the best possible match between a student's potential and a particular college. The court noted that the testing of college-bound high school students benefitted educational institutions, but nonetheless construed the tax exemption narrowly. (Iowa case law apparently defines "educational institution" in a way similar to the Illinois case definition of what is a "school".) See, *e.g., Illinois College of Optometry v. Lorenz* (1961), 21 Ill. 2d 219, 171 N.E.2d 620.

Significantly, the Iowa court also rejected the ACT Program's attempt to fit within the rationale of Iowa cases that have allowed certain groups that are not charities themselves (such as cooperative hospital laundry services) to claim the tax exemption based on the fact that such associations consist of individually exempt organizations, acting in concert. Hence, the Iowa court followed reasoning similar to that of the Illinois court in *Association of American Medical Colleges* and recognized that a group of exempt organizations is entitled to the same exemptions as the individual members could claim. The Iowa court concluded, however, that the ACT Program did not qualify under this rationale. The program was founded by two educators as an independent organization. However advantageous the testing service was to the schools using it in lieu of creating their own tests, the court did not believe that the ACT Program constituted a "cooperative function of a group of exempt [organizations] acting in concert." (*American College Testing Program, Inc.*, 182 N.W.2d at 828.) The court concluded that since tax exemptions were to be strictly construed, all doubts were to be resolved in favor of taxation.

The YCC, unlike the Association of American Medical Colleges or a cooperative hospital laundry service, is not a group of exempt organizations acting in furtherance of educational or charitable goals. The YCC only represents one tax-exempt organization, Yale University. Moreover, whatever it hopes to achieve on behalf of Yale does not ease the tax burden of Illinois citizens.

The YCC is not a school itself, offering a course of study that lessens the tax burden by providing an education which would otherwise have to be furnished by the State. As the case of *American Col-*

*lege of Chest Physicians* suggests, it is not solely the characterization of the group's activities or its use of the real estate that determines tax-exempt status; rather, the preliminary question is whether the organization seeking the exemption is a "school" as commonly understood or within the rationale of *Association of American Medical Colleges.*

We conclude, therefore, that the YCC's status must be considered apart from that of Yale University. As noted, the YCC is not itself an exempt school under case interpretation. The YCC is not a recognized part of the University. Its members are not part of the staff that the University maintains in its admissions department. YCC members who interview applicants rate them and forward the information to the school but do not make the admissions decision, which is reserved to Yale.

■■ ■ Even if we were to assume that the YCC need not be a school itself to claim the exemption, the fact remains that the standard by which the particular educational activity is judged is whether it is "exclusively" for school purposes, as that phrase has been defined in the real property exemption cases. (For purposes of this appeal we make no distinction based on the fact that the tax exemption in issue is the sales tax and not the real property tax.) The "exclusive use" concept was explained in *MacMurray College v. Wright* (1967), 38 Ill. 2d 272, 230 N.E.2d 846. As the court held, an exclusive use for school purposes does not require a showing that the use is "absolutely indispensable for carrying out the work of the institution. *** Exemption will be sustained if it is established that the property is primarily used for purposes which are *reasonably necessary for the accomplishment and fulfillment of the educational objectives, or efficient administration, of the particular institution.*" (Emphasis added.) 38 Ill. 2d at 278, 230 N.E.2d at 850 (holding that college staff housing facilities are not exempt from property taxation where the primary use is residential and there is no showing that residence in the facilities is required for staff to perform its professional duties).

While the YCC's activities undoubtedly assist Yale's efforts to recruit Chicago-area students, there is no evidence that Yale University could not attract students without the efforts of the YCC or that the actions of the YCC are "reasonably necessary" for Yale to fulfill its educational objectives or operate the school efficiently.

Nor do we find persuasive the YCC's reliance upon *Northwestern Memorial Foundation v. Johnson* (1986), 141 Ill. App. 3d 309, 490 N.E.2d 161, where the court permitted a not-for-profit organization that was not itself a charity to claim a charitable exemption based on

the use of property. In *Northwestern,* the court granted a tax exemption to the organization that operated a parking lot for an affiliated, tax-exempt, charitable organization, a hospital. The court took judicial notice of the location of the hospital complex, in a densely populated urban area, and concluded that the availability of parking was reasonably necessary to accomplish the efficient administration of the hospital.

The *Northwestern* case is distinguishable because there the availability of parking (and thus access to the hospital) was directly related to the hospital's ability to function as a hospital in the congested urban area. In contrast, regardless of how important a school's admissions goals may be to the school, we do not believe that a Chicago-based alumni association's recruitment activities on behalf of Yale in Connecticut are reasonably necessary to the administration of that school under the pertinent Illinois case law. We do not mean to minimize the value to Yale of the YCC's recruiting and fund raising. We conclude, however, that the YCC's activities are not so clearly related to the educational goals or administrative needs of Yale as to require this court to reverse the Department's denial of the purchaser's sales tax exemption.

### THE CHARITABLE EXEMPTION

The YCC's alternative argument that it qualifies as a charity or performs exclusively charitable functions must also be rejected. While the YCC is engaged in raising funds to contribute to the Yale Foundation for helping fund scholarships to Yale, we do not believe this activity may be characterized as charitable within the meaning of the applicable tax law.

The pertinent criteria for determining whether a particular organization's use of property is entitled to a property tax exemption are these: (1) the benefits derived are for an indefinite number of persons, persuading them to an educational or religious conviction, for their general welfare or in some way reducing the burdens on the government; (2) the organization has no indices of for-profit structure such as capital, stock, or shareholders, and earns no profit, but rather (3) derives its funds mainly from private and public charity and the funds are held in trust for the objects and purposes expressed in the charter; (4) the charity is dispensed to all who need and apply for it and does not provide gain or profit in a private sense to any person connected with it; (5) no obstacles are placed in the way of those seeking the benefits; and (6) the exclusive use of the real property is for charitable purposes. *E.g., Methodist Old Peoples Home v. Korzen*

(1968), 39 Ill. 2d 149, 156-57, 233 N.E.2d 537; *American College of Chest Physicians*, 202 Ill. App. 3d 59, 559 N.E.2d 774.

The YCC argues that it "is organized and operated to benefit the public by the influence of education" and that it accomplishes this public benefit by "identifying and evaluating applicants to Yale, stimulating interest in Yale among alumni and the public at large, and maintaining a Yale presence in Chicago." An organization designed to benefit Yale exclusively does not appear to dispense its benefits to an indefinite number of people or all those who need and apply for it. The State of Illinois and its taxpayers receive no apparent relief from any economic burden by the YCC's activities. Accordingly, we find it hyperbolic to claim as a "charitable purpose" the benefits reserved exclusively to Yale alumni and students.

For the reasons set forth, we affirm the denial of the YCC's application for a purchaser's sales tax exemption.

Affirmed.

JOHNSON and McMORROW, JJ., concur.