THE PEOPLE *ex rel.* John R. Thompson, County Treasurer, Appellee, *vs.* THE ST. FRANCIS XAVIER FEMALE ACADEMY, Appellant.

*Opinion filed February 20, 1908.*

1. TAXES—*exemption of "public schools" from taxation does not apply to private schools.* The provision of the tax exemption statute with respect to public school houses, as distinguished from the provision respecting institutions of learning, applies only to schools owned by the State, school districts and boards of education organized under the school laws of the State, and not to private schools.

2. SAME—*what is essential to constitute an "institution of learning."* To constitute an "institution of learning," within the meaning of the tax exemption statute, instruction in higher branches

than are ordinarily taught in the public schools must be given; but the facts that the course of study includes the common branches taught in the public schools, and that the larger portion of the pupils study those branches and do not take the higher ones, do not deprive the school of its character of an institution of learning.

3. SAME—*playground enclosed with buildings of institution of learning is within tax exemption.* Ground in the same enclosure with the buildings of an institution of learning and used exclusively as a recreation ground for students of the institution is within the meaning of the statute exempting from taxation property of institutions of learning.

4. SAME—*when property bought for institution of learning is liable for taxes.* Property bought by a trust company for an institution of learning before the first day of April but not paid for by such institution or conveyed to it until after that date is liable to sale for taxes which became a lien upon the property before it was conveyed to the institution.

APPEAL from the County Court of Cook county; the Hon. JOHN B. VAUGHN, Judge, presiding.

GEORGE W. WILBUR, for appellant.

HARRY A. LEWIS, County Attorney, and WILLIAM F. STRUCKMANN, for appellee.

Mr. JUSTICE FARMER delivered the opinion of the court:

This is an appeal from a judgment of the county court of Cook county against certain lots of appellant in the city of Chicago for taxes for the year 1906.

Appellant is a corporation organized under a special act of the General Assembly in 1847 and given perpetual succession. It was given power to acquire, hold and convey real and personal property, and was required to hold the property of the institution solely for the purposes of education and not as stock for the individual benefit of the incorporators or any contributor, and apply all funds collected, or the proceeds of the property, in erecting suitable build-

ings, supporting necessary officers, instructors and servants, and procuring books and apparatus necessary to the success of said institution. It was also given power to confer such academical or honorary degrees as are usually conferred by similar institutions. The institution had about six hundred students, ranging in age from seven to twenty-two years. It owned a block of land upon which its buildings were located, and was desirous of obtaining the lots against which the taxes in controversy are levied. Said lots comprised a block and lay opposite the property of appellant, being separated from the same by Evans avenue. In the fall of 1904 appellant entered into negotiations, through the Equitable Trust Company, for the purchase of the block desired. The lots were owned by a number of persons, and W. F. Grower was employed by John R. Walsh, president of said trust company, to act as a broker in purchasing the property. Grower purchased pieces of the property from time to time up to December, 1905, taking the title in his own name. December 15, 1905, one of the pieces of property sought to be taxed was deeded by Grower to appellant, the deed being filed for record December 29, 1905. Deeds to the other pieces of property were made by Grower to the Equitable Trust Company, bearing date December 14, 1904, and recorded December 30, 1905. The Equitable Trust Company advanced the money to make the purchases and charged appellant interest on the same. The interest amounted to $4890.95. Appellant also paid said company $500 for its services in connection with the purchase, and April 4, 1906, paid Grower $1764.79 for making said purchases. Mary Ryan, president of appellant, made the arrangements with Mr. Walsh for the purchase of the property, and stated the understanding between the parties was that Mr. Walsh would look after the purchase for the academy and would advance or loan the money for the purchase, and would take care of it for them until they were able to take care of it themselves. The trust company advanced the money

to make the purchases and appellant re-paid the same, making a payment of $12,950 January 12, 1905, one of $760.26 on February 14, 1905, and the balance, $77,890.95, August 17, 1906. On January 8, 1906, appellant made application for a loan on the property to the Mutual Life Insurance Company, to obtain the money to make the last above mentioned payment to the trust company. The attorney who examined the title preliminary to making the loan found title to all the lots, except the one to which the deed had been made direct to appellant, in the Equitable Trust Company, and on August 3, 1906, a deed was made to appellant for the lots to which said company held title, and also a declaration of trust, which was attached thereto, showing that the title to said lots had been acquired in trust for appellant. These were recorded on August 17, 1906, after the making of the last payment to said trust company. In the fall of 1905 appellant seems to have taken possession of the property, and began to improve it by removing brushwood, planting trees and laying out walks and drives, and in June, 1906, paid the taxes thereon for the year 1905. February 8, 1906, the city of Chicago, in consideration of the dedication by appellant of a strip of land on the west side of the property originally owned by appellant, vacated Evans avenue from Forty-ninth to Fiftieth street, the ordinance stating appellant was the owner of the property in question. In the fall of 1906 a fence was put around all of the premises owned by appellant and the property in controversy was used as a park or recreation ground for the pupils of the school. All of the property purchased as above, consisting of lots 6, 7, 8, 9 and 10, was assessed and taxes extended against it for the year 1906. When application for judgment was made, appellant filed objections, claiming the same to be exempt because it was the property of an institution of learning. Judgment was rendered against the said property for taxes, and the case is brought here by appeal.

Two questions are presented by this appeal: Is appellant an institution of learning, as provided by section 2 of the Revenue act, and was it the owner of the property on the first day of April, 1906? As a portion of lot 9 of the property in question was by deed conveyed direct to appellant on December 15, 1905, thereby making it the owner, at least, of that portion on April 1, 1906, it will be necessary to first determine whether appellant is an institution of learning within the meaning of the statute.

The statute exempts from taxation "all lands donated by the United States for school purposes, not sold or leased; all public school houses; all property of institutions of learning, including the real estate on which the institutions are located, not leased by such institutions or otherwise used with a view to profit." The property in question was within the same inclosure as the school buildings of appellant, and was used as a playground for the pupils of the institution and for no other purpose, and under the holding of this court in *Monticello Female Seminary* v. *People,* 106 Ill. 398, was so used as to come within the above exemption if the school is an institution of learning within the meaning of the statute.

The charter of the institution does not state particularly the character of school to be established. It requires that the property shall be held solely for the purposes of education, that no particular religious faith shall be required of those who become students, and gives authority to confer academical or honorary degrees and to appoint teachers and prescribe the course of studies to be pursued. Only one witness, Mary Ryan, president and mother superior of the institution, testified concerning the character of the school. She stated about six hundred scholars were in the school, a majority of whom were between seven and twenty-one years of age; that English in all its branches, French, Spanish, German, Latin, musical studies, violin, piano and painting, were taught and that diplomas were given; that

tuition was charged all the students and that students were received as boarders; that there were about twenty pupils in the primary grade and forty-five to fifty in the eighth or grammar grade; that about forty-five reached next to the last year of the high school and thirty-three were in the graduating class of last year. She also testified that the school was graded from primary grades up, corresponding to the grades in the public schools; that the highest grade was four years in the high school, and a post-graduate course where the above mentioned higher branches were taught; that last year they had five or six post-graduates. About three hundred and fifty to four hundred of the pupils were in the first eight grades. The building is four stories high, and has from twenty to twenty-five class and lecture rooms and a number of sleeping rooms.

If only the rudimentary branches which are commonly taught in the public schools were taught in this school it could not be held exempt from taxation, either as a public school or an institution of learning. Public school houses exempt from taxation were held in *People* v. *Ryan,* 138 Ill. 263, to be such as were owned by the State, school districts and boards of education organized under the school laws of the State, adopted in pursuance of the constitutional requirement that "the General Assembly shall provide a thorough and efficient system of free schools, whereby all children of this State may receive a good common school education." The constitution, and laws passed in pursuance of it, were not intended to exempt from taxation school houses owned by private individuals, corporations or societies wherein are taught no higher branches than those ordinarily taught in the public schools. In addition to the exemption by the section of the statute above quoted of public school houses, the property of "institutions of learning" not leased or otherwise used with a view to profit is also exempted from taxation. Appellant is not a school conducted for profit and the property here in controversy was not leased or otherwise

used for profit, and if the course of studies taught therein and the character of instruction given its scholars entitled it to be denominated an institution of learning, then the property owned by it April 1, 1906, was exempt from taxation. In *Montgomery* v. *Wyman,* 130 Ill. 17, it was said: "The expression, 'institution of learning,' is broad enough to include every description of enterprise undertaken for educational purposes which is of higher grade than the public schools provided ·for in the statutes." The *Wyman case* was referred to and commented on in *McCullough* v. *Board of Review,* 183 Ill. 373, and after quoting from the *Wyman case* the definition of an institution of learning, the court said: "Public and private schools were defined to be schools of inferior grade where instruction is given in the rudimentary branches of education, such as are ordinarily taught in the public schools, and institutions of learning to be such as afford opportunities for higher education." Appellant's charter conferred upon it power to prescribe and direct the course of study to be pursued in the school and to confer honorary degrees. Mary Ryan, president of appellant, testified that in addition to the studies taught in the grades corresponding to the grades in the public schools and high school there were taught in the institution all the languages, sciences, painting and music, including violin and piano. She also testified a post-graduate course was provided for.

We are unable to determine from the evidence whether all the branches taught in the institution were taught to scholars before graduation in the course corresponding with the high school course or whether some of them were taught only to those taking what is called the post-graduate course. It does appear, however, that branches were taught and instruction given upon subjects not ordinarily taught in the public schools and which are usually taught only in schools affording opportunities for a higher education than are provided for in the public schools. If instruction only in these higher branches or similar branches had been given in the

school, then undoubtedly it should be classed as an institution of learning.  A course of preparation for scholars is necessary before they are fitted to take up the study of the higher branches, and this preparatory course would usually include some or all the subjects taught in public schools.

The question then arises whether, notwithstanding the fact the course of study provided by this institution includes branches usually taught only in schools affording opportunity for higher education than the public school, because the course of study also includes branches ordinarily taught in the public schools, it is thereby deprived of the character of an institution of learning, within the meaning of the law. We are of opinion the determination of the question depends upon whether a higher education than that afforded by the public schools is given the scholars in the institution, and if it is, the fact that it also afforded instruction in branches usually taught in the public schools could not deprive it of the character of an institution of learning, within the meaning of the statute.  It is a well known fact that many institutions of learning have preparatory courses embracing at least some of the branches usually taught in the public schools, but they are none the less treated and considered as institutions of learning.  The fact that more of its scholars studied the lower than the higher branches is not a controlling factor in the solution of the question whether the appellant is an institution of learning.  If it afforded a course of study and opportunity for a higher education than was provided by the public school system, and classes, in fact, pursued the studies provided by the higher course, then the fact that a majority of the scholars did not avail themselves of the opportunity for studying the higher branches and securing a higher education is, we think, of no significance in determining the question.  In our opinion, therefore, appellant's objections to the taxes against the property owned by it April 1, 1906, should have been sustained.

Appellant received its title to the south 57.6 feet, except the west 33 feet of the west 146.76 feet of lot 9, by deed from William F. Grower and wife December 15, 1905, and as to that property the objection should have been sustained. The remaining property objected for was bought for appellant by the Equitable Trust Company with its own money and the title conveyed to said trust company. Appellant did not have the money to pay for it at the time the purchase was made and the trust company retained the title to the property until appellant secured the money and paid for it. Some small payments were made prior to April 1, 1906, but substantially the whole of the purchase price was paid to the trust company by appellant in August, 1906. That portion of the property objected for never became the property of appellant until after the taxes became a lien against it. While it is true the trust company bought the property for the purpose of conveying it to appellant when appellant could procure the money to pay for it, it no more became its property until it paid for it than would have been the case if appellant had made a contract with the original owner to convey the property to it when it should pay the purchase price therefor. As to that property the court rightly overruled appellant's objections, and in that respect the judgment of the county court is affirmed.

As to the property above described which the appellant owned prior to April 1, 1906, the judgment of the county court overruling appellant's objections is reversed and the cause remanded, with directions to the county court to sustain appellant's objection to the tax against said property. Appellant will be required to pay two-thirds of the costs of this appeal.

*Reversed and remanded, with directions.*