ILLINI MEDIA COMPANY, Plaintiff-Appellee, v. THE DEPARTMENT OF REVENUE, Defendant-Appellant.

Fourth District   No. 4—95—0471

Argued January 23, 1996.—Opinion filed April 19, 1996.

James E. Ryan, Attorney General, of Chicago (Barbara A. Preiner, Solicitor General, and Mary E. Welsh (argued), Assistant Attorney General, of counsel), for appellant.

Lawrence E. Johnson (argued), of Lawrence E. Johnson & Associates, P.C., of Champaign, for appellee.

JUSTICE GARMAN delivered the opinion of the court:

This case involves a dispute with respect to a property tax exemption. Plaintiff, Illini Media Company (Illini Media), owns three parcels of land. It sought exemption from 1990 property taxes under section 19.1 of the Revenue Act of 1939 (Act) (Ill. Rev. Stat. 1989, ch. 120, par. 500.1; see 35 ILCS 205/19.1 (West 1992)). Section 19.1 of the Act exempted property used for educational purposes. The primary use of the property—educational versus noneducational—is the crux of this appeal. Defendant Illinois Department of Revenue (Department) denied the exemption. Illini Media then sought judicial review. A circuit court reversed the Department's ruling. The Department appeals. We affirm in part, reverse in part, and remand.

## I. BACKGROUND

Illini Media is a multimedia not-for-profit corporation, serving the community of the University of Illinois at Urbana-Champaign. It operates a radio station and publishes the university newspaper, The Daily Illini, the university yearbook, and a technical journal. Before 1988 it operated from a university-owned building. In 1988 it purchased the first of the three parcels at issue and since moved most of its operations there (the radio station remained on campus).

Illini Media was incorporated, under a different name, in 1911, by the president of the university. At present, its corporate purposes are "to publish and distribute student publications, to educate University of Illinois at Urbana-Champaign students in the field of mass communications, and to operate other related student enterprises in the field of mass communications."

All activities of Illini Media are subject to the authority of the chancellor of the university. Membership on the board of directors of this not-for-profit corporation is limited to university students and faculty members, who serve without pay. Its workers are a few paid staff and over 700 unpaid students.

All student staff must be full-time students. Students do not receive credit for their employment. All publications rely on advertising and subscriptions or sales for their income.

Previously, the Department had found that Illini Media operated exclusively for educational purposes. The Department also had exempted Illini Media from the retailers' occupation tax, service occupation tax, use tax, and service use tax because it had held that Illini Media was organized and operated exclusively for educational purposes. Yet another item in the record is a ruling of the National Labor Relations Board, refusing to assert its jurisdiction after concluding that the activities of Illini Media were so intimately connected with the university's role of educating students as to be indistinguishable, and that any commercial activities of Illini Media were secondary to its educational function. The university vice-chancellor acknowledged that Illini Media's activities were interrelated to the overall educational mission of the university and directed toward, and beneficial to, the student body.

## II. ANALYSIS

### A. Waiver

■ The Department first argues that Illini Media waived its right to claim an exemption under section 19.1 of the Act, by virtue of its alleged reliance on section 19.7 of the Act (Ill. Rev. Stat. 1989, ch. 120, par. 500.7) in its argument to the Department. Section 19.1 deals with educational uses, while section 19.7 deals with charitable organizations. The Department's contention is not well taken.

From the outset, Illini Media based its claim for exemption on section 19.1. The Department denied the exemption, finding that "the primary use of the property is not educational," *i.e.*, under section 19.1. Illini Media argued in its brief for the departmental administrative hearing that "in fact the *sole* use[ ] of the property *** is educational." (Emphasis in original.) The administrative law judge's (ALJ) decision specifically referenced section 19.1 as one of the bases for the decision (even though the ALJ spent more effort at distinguishing section 19.7). The Department admitted at oral arguments both before us and the circuit court that the ALJ did address section 19.1. Finally, the circuit court relied on section 19.1 in reaching its decision to reverse. In view of the foregoing, the Department's waiver argument is difficult to fathom.

Under the statute, a reviewing court's role is to consider the questions of law and fact presented by the record before the agency. 735 ILCS 5/3—110 (West 1994). Since Illini Media had consistently argued section 19.1, the circuit court did not err in considering this theory on administrative review. *Cf. People ex rel. Olmsted v. University of Illinois*, 328 Ill. 377, 387, 159 N.E. 811, 815 (1927) (written applications-objections determine the issues in tax exemption cases).

## B. Exemption of Illini Media

■■ Section 19.1 exempted from taxation:

"All lands *** used for public school, college, theological seminary, university, or other educational purposes and the proceeds thereof, whether held in trust or absolutely ***. The property described *** shall be exempt from taxation whether owned by a resident or non-resident of this State or by a corporation *** and not leased or otherwise used with a view to profit." 35 ILCS 205/19.1 (West 1992) (formerly Ill. Rev. Stat. 1989, ch. 120, par. 500.1).

When construing the exemption statutes, we must be mindful that "taxation is the rule. Tax exemption is the exception." *Chicago Bar Ass'n v. Department of Revenue*, 163 Ill. 2d 290, 301, 644 N.E.2d 1166, 1171-72 (1994). All debatable questions must be resolved in favor of taxation. *Chicago Bar Ass'n*, 163 Ill. 2d at 301, 644 N.E.2d at 1172; *People ex rel. Nordlund v. Ass'n of the Winnebago Home for the Aged*, 40 Ill. 2d 91, 99-100, 237 N.E.2d 533, 538 (1968). The applicant has the burden of proving "clearly and conclusively" that a property falls within the exemption. *Chicago Bar Ass'n*, 163 Ill. 2d at 300, 644 N.E.2d at 1171. However, construction of the statutes should not be " 'unreasonably narrow.' " *People ex rel. Goodman v. University of Illinois Foundation*, 388 Ill. 363, 370, 58 N.E.2d 33, 37 (1944), quoting *People ex rel. Pearsall v. Catholic Bishop*, 311 Ill. 11, 16, 142 N.E. 520, 522 (1924).

■ Clearly, Illini Media is not a school. However, the statute is written in the disjunctive: property may be exempt if used as a school *or* for "educational purposes." The ALJ appeared to have construed the statute unreasonably narrowly, by concluding that only property of schools may be exempt. ("[Illini Media] does not hold its property in effect in trust for the University.") After finding that Illini Media "is not a school," the ALJ reasoned that, since the student workers did not receive college credit for their work at Illini Media, the exemption was improper. However, on the previous page, the ALJ made a finding that "[Illini Media's] evidence *** establishes that the parcels here in issue and the building *** were *primarily related to the goal of educational development* ***." (Emphasis added.)

The ALJ failed to consider that section 19.1, in addition to exempting schools, also exempts lands used for educational purposes. The ALJ unequivocally stated that the use of the property was "primarily related to the goal of educational development." This finding is internally inconsistent with the denial of exemption for educational purposes. "Educational development" is an educational purpose; therefore, Illini Media should have received the exemption.

The Department now argues that Illini Media's "primary use of the property at issue [was] to publish and distribute the newspaper, the yearbook, and the engineering journal." This assertion is at odds with at least three prior evaluations of the relevant facts: first, the Champaign County Board of Review recommended the exemption (based on the section 19.1 educational use argument); second, Department's own ALJ, in an otherwise inconsistent opinion, found that the use was primarily for "educational development"; last, the circuit court found that the property was used for education purposes, with profits being only incidental to the main purpose. We find the educational use was clearly established by the record.

In addition to the facts which clearly point toward educational use of the land, the character of a corporation and the object for which it was organized may be ascertained from its charter or certificate of incorporation. *Goodman*, 388 Ill. at 372, 58 N.E.2d at 38. Among the purposes listed in Illini Media's certificate of incorporation was "to educate University of Illinois at Urbana-Champaign students in the field of mass communications." This is another piece of evidence supporting the circuit court's finding of educational use.

*Goodman* is instructive. In it, the University of Illinois Foundation, a not-for-profit corporation, appealed the denial of exemption for some parcels of land it owned. These parcels were leased to the university and used for a variety of enterprises, including a bowling alley, barber shop, confectionery, restaurants, baseball and football offices, and the offices of The Daily Illini newspaper. The foundation sought tax exemption for all the parcels on both the charitable and educational purpose theories (present sections 19.7 and 19.1). The Illinois Supreme Court held the properties were tax exempt, finding they were used for educational purposes. *Goodman*, 388 Ill. at 376, 58 N.E.2d at 39.

*Goodman* indicated that classroom instruction was *not* a prerequisite for finding educational use, because "[t]he ever-expanding scope of modern education calls for more than classrooms"; consequently, "use of property for public educational purposes today means more than its devotion solely to academic ends." *Goodman*, 388 Ill. at 372, 58 N.E.2d at 38. It also established the principle that generation of

revenue does not deprive property of its exemption, if it is merely incidental to its overarching educational goal. *Goodman,* 388 Ill. at 374, 58 N.E.2d at 39. Finally, the *Goodman* court cautioned against " 'unreasonably narrow construction' " of the Act. *Goodman,* 388 Ill. at 370, 58 N.E.2d at 37, quoting *Pearsall,* 311 Ill. at 16, 142 N.E. at 522.

Here, the use was clearly educational—much more so than a bowling alley, confectionery, or a barber shop. *Cf. Association of American Medical Colleges v. Lorenz,* 17 Ill. 2d 125, 129, 160 N.E.2d 763, 765 (1959) ("[i]f football and bowling in conjunction with an educational institution do not defeat the exemption, certainly programs realistically designed to assist the furtherance of intellectual instructions can hardly be accorded an inferior status"). The student workers were educated by receiving "hands-on" experience in running modern media enterprises. The revenue generated was incidental—even the Department does not argue that Illini Media was in business to make money. By its plain language, the statute allows entities such as Illini Media to receive exemptions, once the primary educational use is established. Illini Media clearly and conclusively proved that it uses the property primarily for educational purposes (indeed, it is hard to imagine any other conclusion), and any decisions contrary were legally erroneous.

Finally, the Department argues that adopting Illini Media's interpretation would require exemption for the property of "virtually any not-for-profit entity that gives students 'hands on' experience." This argument is without merit. The Department failed to consider that the supreme court mandated considerations "of the particular factual situation[s] presented." *Goodman,* 388 Ill. at 370, 58 N.E.2d at 37. It is not likely that just "any not-for-profit entity" would be subordinate to the Chancellor of the University of Illinois, employ over 700 students of the University of Illinois, be governed by the students and faculty of the University of Illinois, have students in positions of leadership of the enterprise, have a specific mission with respect to the students of the University of Illinois, maintain this mission for over 84 years since its incorporation in 1911, and have other particular characteristics that make Illini Media unique. Under the "particular factual situation presented," Illini Media clearly meets the requirements of section 19.1.

### C. Exemption of Parking Areas

Section 19.16 of the Act exempts:

"[p]arking areas, not leased or used for profit, when used as a part of a use for which an exemption is provided *** and owned

by any *** institution which meets the qualifications for exemption." 35 ILCS 205/19.16 (West 1992) (formerly Ill. Rev. Stat. 1989, ch. 120, par. 500.16).

Illini Media, in addition to the parcel which is used for its offices, owns two adjacent vacant parcels, each improved with a building. Parts of these parcels are used for parking. Illini Media plans to demolish the buildings and use both lots for parking in the future.

■ Because Illini Media is an exempt organization, its parking areas are also exempt under section 19.16. However, the circuit court erred in granting exemption to both lots in their entirety. If the property is not actually being used for an exempt purpose—such as parking—it is not exempt, no matter what the owner's future intentions may be. *Antioch Missionary Baptist Church v. Rosewell*, 119 Ill. App. 3d 981, 982, 457 N.E.2d 500, 501 (1983). If only the identifiable portion of a property is used for an exempt purpose, while the rest of the property is used primarily for a nonexempt purpose (or not at all), only the portion used for the exempt purpose qualifies for an exemption. *City of Mattoon v. Graham*, 386 Ill. 180, 186, 53 N.E.2d 955, 958 (1944). Illini Media states that the information about lot sizes and area covered by the houses had been submitted to the Department's ALJ on September 29, 1993; therefore, the evidence is already before the Department for purposes of apportioning the exempt and nonexempt uses of the two lots. Illini Media should receive an exemption for the portion of the lots used for parking.

## III. CONCLUSION

For the foregoing reasons, we affirm the circuit court on the issue of exemption for Illini Media; affirm in part and reverse in part on the issue of the vacant lots and remand to the Department for apportionment of vacant lot uses in accordance with this order.

Affirmed in part; reversed in part and remanded.

STEIGMANN and McCULLOUGH, JJ., concur.