CHICAGO AND NORTHEAST ILLINOIS DISTRICT COUNCIL OF CARPENTERS APPRENTICE AND TRAINEE PROGRAM, Plaintiff-Appellant, v. THE DEPARTMENT OF REVENUE *et al.*, Defendants-Appellees (Community Consolidated School District 59 *et al.*, Defendants).

First District (3rd Division)   No. 1—96—1834

Opinion filed November 26, 1997.

Gary A. Weintraub, P.C., of Northbrook, and Craig A. Burman, of Chicago, for appellant.

James E. Ryan, Attorney General, of Chicago (Barbara A. Preiner, Solicitor General, and Claudia E. Sainsot, Assistant Attorney General, of counsel), for appellees.

JUSTICE GORDON delivered the opinion of the court:

BACKGROUND

This appeal arises from a circuit court order, entered on administrative review, which affirmed the Illinois Department of Revenue's denial of the plaintiff's request for a property tax exemption from 1989 property taxes. The plaintiff, Chicago and Northeast Illinois District Council of Carpenters Apprentice and Trainee Program (hereinafter referred to as the Council), is a not-for-profit entity that was established solely for the purpose of operating a carpentry training program. The Council offers such a training program on an improved parcel of property that it owns, located at 1256 Estes Avenue in Elk Grove Village, Illinois, and sought an exemption for that property from 1989 property taxes under section 19.1 of the Revenue Act of 1939 (Ill. Rev. Stat. 1989, ch. 120, par. 500.1 (now repealed, amended and recodified in the Property Tax Act at 35 ILCS 200/15—35 (West 1996))). The Council filed a real estate tax exemption application with the Board of Appeals of Cook County (Board of Appeals) (see 35 ILCS 200/15—5 (West 1996)), alleging that because it operated a school on the subject property, it was entitled to tax-exempt status under section 19.1. After reviewing the Council's application, the Board of Appeals recommended to the Department of Revenue that the Council receive the requested exemption from its 1989 property taxes. See 35 ILCS 200/16—130 (West 1996) (stating that decisions of Board of Appeals regarding tax liabilities are not final and that the Illinois Department of Revenue shall make all final liability determinations). However, the Department of Revenue denied the Council's request for tax-exempt status on the grounds that the primary use of the subject property was not educational.

Thereafter, the Council requested and received an administrative hearing before the Department of Revenue (see 35 ILCS 200/8—35 (West 1996)). At the conclusion of that hearing, the administrative law judge rejected the requested exemption, and the Council sought administrative review in the circuit court of Cook County. See 35 ILCS 200/8—40 (West 1996). The circuit court remanded the case for a new administrative hearing due to inconsistencies in the record and because the plaintiff had failed to give proper notice of its application for tax exemption to all municipalities and school districts in which the subject property was located (see 35 ILCS 200/16—130 (West 1996)). Pursuant to that remand and prior to the new hearing, defendants Community Consolidated School District 59 and Arlington Heights Township High School District 214 intervened in this dispute and opposed the granting of the requested tax exemption.

On July 27, 1995, the Department of Revenue held its final administrative hearing in this matter and denied the Council's request for a real estate tax exemption from 1989 property taxes. Thereafter, the Council filed another complaint seeking administrative review in the circuit court of Cook County, which affirmed the decision of the Department of Revenue. The Council now appeals from that decision.

FACTS

The facts are undisputed. The Council is a not-for-profit trust that was created in 1965 by the International Brotherhood of Carpenters (a union) and the Builders' Association of Chicago (a group of general contractors) for the exclusive purpose of providing education and training for carpenters. The Council has received not-for-profit tax exemption status from the United States Internal Revenue Service under section 501(c)(5) of the Internal Revenue Code (see 26 U.S.C. § 501(c)(5) (1988)), which exempts labor organizations from federal taxation. The Council is also exempt from occupation tax, service occupation tax, use tax and service use tax in Illinois, pursuant to the 1987 finding of the Illinois Department of Revenue that the Council "is organized and operated exclusively for educational purposes." Pursuant to the declaration of trust, the Council is governed by four members of the Brotherhood of Carpenters and by four members of the Builders' Association. A collective bargaining agreement between those groups requires the Builders' Association to contribute sufficient funds to the Council to finance its creation and maintenance.

According to the undisputed testimony presented at the final administrative hearing, the goal of the "Apprentice Training Program" is to enable students enrolled in the program to complete a job properly by bringing their skills up to the level at which they could work competitively for contractors. The program consists of four years of instruction, which includes both the preapprentice and apprentice training programs. To qualify for the preapprentice program, a person must be at least 17 years old and must have completed at least two years of high school.

The preapprentice training course lasts 12 weeks and is conducted eight hours per day during that period. Approximately one-third of each day (*i.e.*, approximately $2^1/2$ hours per day) is spent in the classroom, and two-thirds of each day is spent in the shop. During the first three weeks of the preapprentice program classroom time, the training is divided into instruction in improving the math skills of the students and in blueprint reading. The shop work in the preap-

prentice program was designed to introduce the students to the major divisions of carpentry. After completing the preapprentice program, the students are required to join the International Brotherhood of Carpenters, to pay union dues, and to get a job as a carpenter's apprentice with a union contractor. The Council assists its students in securing such carpenter positions, which are prerequisites to continued enrollment in the apprentice program.

Upon completion of the preapprentice program, students enter the second phase of instruction—the apprentice program. In each of the remaining three to four years of training, the students are required to complete at least 1,200 hours of on-the-job training. During each quarter, an apprentice is also required to attend one five-day class on some subject concerning carpentry. Those classes include courses on concrete, drywalling, construction of stairs, roof framing, vinyl and carpeting floor-covering, and framing structural steel. The students are also required to complete a 10-hour course regarding compliance with the Occupational Safety and Health Act of 1970 (see 29 U.S.C. § 651 *et seq.* (1982)). Besides the limited instruction in math skills previously noted, no other traditional academic subjects are taught in the program. (During the administrative hearing, the coordinator of the apprentice program testified that the "general educational" subjects taught at the Elk Grove Village property included "Math, drafting, sketching, and welding. I am not sure you could call that a general education.")

Upon completion of the preapprentice and apprentice programs, students receive a certificate from the United States Department of Labor stating that they have completed those programs, and they also receive a journeyman's certificate from the United Brotherhood of Carpenters. However, students are not awarded either a diploma or a degree for completing their carpentry training.

Between 1965 and 1988, the carpentry training program now offered by the Council was offered by the City of Chicago Board of Education (Board of Education) at the Washburne Trade School in Chicago, Illinois. While the program was at Washburne, it was financed by the Board of Education, which received reimbursement or contribution for that financing from the State of Illinois. During the 1987-88 school year, the Board of Education budgeted 18 carpentry teaching positions at Washburne, had a total carpentry training program budget at Washburne of approximately $800,000, and had an overall Washburne budget of $4,708,768 (the Board of Education offered courses in other areas besides carpentry at Washburne).

In 1986, the Council purchased the subject parcel of real estate in

Elk Grove Village, Illinois, and constructed a building thereon for both preapprentice and apprentice training. The Elk Grove Village facility included a preapprentice training area and, in addition, contained a millwright shop, a welding lab, a millwork area, a lathing area, a floor-covering area, a concrete-forms-construction area, carpentry shops, a stair-construction area, a rafter-construction area, a lunchroom and restrooms. In 1988, the Board of Education terminated all apprentice training at Washburne, and the Council alone began to fund and operate that same program at its Elk Grove Village facility. However, pursuant to a written agreement between the Council and the Chicago Board of Education, the Board of Education continued to offer preapprentice training at Washburne until 1991. After 1991, the Board of Education also terminated all preapprentice training at Washburne, and the instruction in carpentry that had been provided at Washburne was thereafter offered and funded exclusively by the Council at its Elk Grove Village facility (the Elk Grove Village facility began to offer both preapprentice and apprentice training in 1989).

As noted, the circuit court affirmed the Department of Revenue's denial of the Council's application for an exemption from 1989 property taxes otherwise owing on its Elk Grove Village parcel. For the following reasons, we affirm.

DISCUSSION

■ The sole issue on appeal is whether the circuit court erred in affirming the Department of Revenue's denial of the Council's request for a property tax exemption. All property is subject to taxation unless specifically exempted by statute, and it is well settled that "taxation is the rule. Tax exemption is the exception." *Chicago Bar Ass'n v. Department of Revenue*, 163 Ill. 2d 290, 301, 644 N.E.2d 1166, 1171-72 (1994). Accord *City of Chicago v. Illinois Department of Revenue*, 147 Ill. 2d 484, 590 N.E.2d 478 (1992); *Illini Media Co. v. Department of Revenue*, 279 Ill. App. 3d 432, 664 N.E.2d 706 (1996); *County of Boone v. Department of Revenue*, 215 Ill. App. 3d 453, 574 N.E.2d 1227 (1991); *Girl Scouts of Du Page County Council, Inc. v. Department of Revenue*, 189 Ill. App. 3d 858, 545 N.E.2d 784 (1989). Thus, statutes granting tax exemptions must be construed strictly in favor of taxation, and all debatable questions must be resolved in favor of taxation. *City of Chicago*, 147 Ill. 2d 484, 590 N.E.2d 478; *Harrisburg-Raleigh Airport Authority v. Department of Revenue*, 126 Ill. 2d 326, 533 N.E.2d 1072 (1989); *Coyne Electrical School v. Paschen*, 12 Ill. 2d 387, 146 N.E.2d 73 (1957); *Illini Media Co.*, 279 Ill. App. 3d 432, 664 N.E.2d 706; *Winona School of Professional Photography v. Department of Revenue*, 211 Ill. App. 3d 565, 570 N.E.2d 523 (1991).

■ The party claiming an exemption has the burden of proving clearly and conclusively that the subject property falls within both the constitutional authorization and the terms of the statute under which the exemption is claimed. *City of Chicago*, 147 Ill. 2d 484, 590 N.E.2d 478; *Harrisburg-Raleigh Airport Authority*, 126 Ill. 2d 326, 533 N.E.2d 1072; *Coyne*, 12 Ill. 2d 387, 146 N.E.2d 73; *Illini Media Co.*, 279 Ill. App. 3d 432, 664 N.E.2d 706; *Winona School of Professional Photography*, 211 Ill. App. 3d 565, 570 N.E.2d 523. Where, as here, the facts are undisputed, a determination of whether property is exempt from taxation is a question of law, in which the reviewing court must apply the appropriate legal standard to the undisputed facts. *City of Chicago*, 147 Ill. 2d 484, 590 N.E.2d 478; *Board of Certified Safety Professionals of the Americas, Inc. v. Johnson*, 112 Ill. 2d 542, 494 N.E.2d 485 (1986); *Winona School of Professional Photography*, 211 Ill. App. 3d 565, 570 N.E.2d 523. Each claim for an exemption must be determined from the facts presented, on a case-by-case basis. *Coyne*, 12 Ill. 2d 387, 146 N.E.2d 73; *Winona School of Professional Photography*, 211 Ill. App. 3d 565, 570 N.E.2d 523.

■ The current Illinois Constitution authorizes the legislature to provide statutory exemptions from property taxes, as follows:

"The General Assembly by law may exempt from taxation only the property of the State, units of local government and school districts and property used exclusively for agricultural and horticultural societies, and for school, religious, cemetery and charitable purposes." Ill. Const. 1970, art. IX, § 6.

This provision for school property tax exemptions has existed in essentially the same form in the Illinois Constitution since 1870. See Ill. Const. 1870, art. IX, § 3 (stating that the General Assembly may enact laws which exempt from taxation such "property as may be used exclusively *** for school *** purposes").

■ In 1989, the tax year in question, section 19.1 of the Revenue Act of 1939 (Ill. Rev. Stat. 1989, ch. 120, par. 500.1 (now repealed, amended and recodified in the Property Tax Act at 35 ILCS 200/15—35 (West 1996))), under which the plaintiff claims an exemption, provided in pertinent part that tax exemptions would be granted for

"all property of schools, *** including the real estate on which the schools are located and any other real property used by such schools exclusively for school purposes, not leased by such schools or otherwise used with a view to profit *** and all lands heretofore or hereafter *** used for *** educational purposes and the proceeds thereof, whether held in trust or absolutely; and including, in counties of over 200,000 population which classify real property, property *** on or adjacent to *** the grounds of a school

which property is used by *** [an] association or organization which serves the advancement of learning in a field or fields of study taught by the school and which property is not used with a view to profit."

This provision, too, has existed in essentially the same statutory form in Illinois since at least 1877. See Rev. Stat. 1877, ch. 120, par. 2 ("All property described in this section *** shall be exempt from taxation *** [including] [a]ll property of institutions of learning").

The Council contends that even though its carpentry training program is predominantly vocational, it is nevertheless entitled to a school exemption under section 19.1 of the Revenue Act of 1939 (Ill. Rev. Stat. 1989, ch. 120, par. 500.1 (now repealed, amended and recodified in the Property Tax Act at 35 ILCS 200/15—35 (West 1996))). In support, it argues that, pursuant to the requirements of section 19.1, its Elk Grove Village carpentry training facility is used solely for educational purposes, and duplicates the carpentry program formerly offered by the Board of Education at the Washburne Trade School, thereby saving the state hundreds of thousands of dollars in tax revenue. However, for the reasons discussed below, we believe that the Council's construction of section 19.1 is overbroad.

As is apparent from its face, section 19.1 provides a property tax exemption for property used as a school or for educational purposes, but it does not define the scope of either of those terms. Resultantly, as will be shown, there has been an ongoing series of attempts to qualify for the exemption by schools in the private sector purporting to teach any number of subjects, ranging from schools offering the full gamut of traditional academic courses, to schools offering instruction in highly specialized vocational and recreational skills and activities.

Our review of those decisions reveals that only a small percentage of these private applicants met with success before our courts. For cases denying the exemption, see *Board of Certified Safety Professionals*, 112 Ill. 2d 542, 494 N.E.2d 485; *Milward v. Paschen*, 16 Ill. 2d 302, 157 N.E.2d 1 (1959); *Coyne*, 12 Ill. 2d 387, 146 N.E.2d 73; *Ray Schools-Chicago-Inc. v. Cummins*, 12 Ill. 2d 376, 146 N.E.2d 42 (1957); *People ex rel. Brenza v. Turnverein Lincoln*, 8 Ill. 2d 198, 132 N.E.2d 499 (1956); *People ex rel. McCullough v. Deutsche Evangelisch Lutherische Jehovah Gemeinde Ungeaenderter Augsburgischer Confession*, 249 Ill. 132, 94 N.E. 162 (1911); *Winona School of Professional Photography*, 211 Ill. App. 3d 565, 570 N.E.2d 523; *American College of Chest Physicians v. Department of Revenue*, 202 Ill. App. 3d 59, 559 N.E.2d 774 (1990); and *Oasis, Midwest Center for Human Potential v. Rosewell*, 55 Ill. App. 3d 851, 370 N.E.2d 1124 (1977). For cases grant-

ing the exemption, see *Illinois College of Optometry v. Lorenz*, 21 Ill. 2d 219, 171 N.E.2d 620 (1961), and *People ex rel. Thompson v. St. Francis Xavier Female Academy*, 233 Ill. 26, 84 N.E. 55 (1908).

■ In reaching their determinations, our courts have looked to two primary factors and several ancillary factors to determine whether a given property constitutes a school or facility used for educational purposes to qualify for an exemption under section 19.1 and its statutory predecessors and successors. First, our courts have looked to whether the property in question contained a school that offered an established, commonly accepted program of academic instruction. This prerequisite was articulated by our supreme court in the early case of *People ex rel. McCullough v. Deutsche Evangelisch Lutherische Jehovah Gemeinde Ungeaenderter Augsburgischer Confession*, 249 Ill. 132, 94 N.E. 162 (1911), wherein the court stated as follows:

> "A school, within the meaning of the constitutional provision, is a place where systematic instruction in useful branches is given by methods common to schools and institutions of learning, which would make the place a school in the common acceptation of the word. What are called schools are conducted for teaching dancing, riding, deportment and other things, which are not schools in the ordinary sense." *Deutsche Evangelisch*, 249 Ill. at 137, 94 N.E. at 164.

Thus, to the extent *Deutsche Evangelisch* looks to the "common acceptation" (*Deutsche Evangelisch*, 249 Ill. at 137, 94 N.E. at 164) of the word "school," it favors schools offering traditional courses of academic instruction. This same standard was again invoked in the more recent appellate court decision in *Oasis, Midwest Center for Human Potential v. Rosewell*, 55 Ill. App. 3d 851, 370 N.E.2d 1124 (1977), wherein the court stated:

> "While the programs [in humanistic psychology] offered at Oasis may be deemed 'educational' in a broad sense, it cannot be maintained that plaintiff's course of study fits into the scheme of education currently in vogue in Illinois and against which the Oasis program must be measured. That plaintiff's members may appreciate this fact as plaintiff's virtue rather than its vice does not serve to alter the fact that plaintiff's use of its property does not qualify it for tax exempt status." 55 Ill. App. 3d at 857, 370 N.E.2d at 1129.

Under this standard, the courts have been inhospitable towards granting a school exemption to schools whose curriculum did not consist of traditional subject matter common to accepted schools and institutions of learning, but was vocational or recreational in nature. See *Board of Certified Safety Professionals*, 112 Ill. 2d 542, 494 N.E.2d

485 (exemption denied for school that issued safety certificates to students who passed basic exams in areas such as fire safety); *Milward*, 16 Ill. 2d 302, 157 N.E.2d 1 (exemption denied for short-term mortuary management school); *Coyne*, 12 Ill. 2d 387, 146 N.E.2d 73 (exemption denied for school that provided technical courses of study in electricity, radio, radar, and electronics); *Ray Schools*, 12 Ill. 2d 376, 146 N.E.2d 42 (exemption denied for school that offered brief classes in dress design, commercial art, and window display skills); *Turnverein Lincoln*, 8 Ill. 2d 198, 132 N.E.2d 499 (exemption denied for school that offered classes in swimming and gymnastics); *Winona School of Professional Photography*, 211 Ill. App. 3d 565, 570 N.E.2d 523 (exemption denied for school that offered courses in photography); *American College of Chest Physicians*, 202 Ill. App. 3d 59, 559 N.E.2d 774 (exemption denied for entity that offered courses in pulmonary medicine not taught on subject property and not required for continued licensure or certification in Illinois); *Oasis, Midwest Center for Human Potential*, 55 Ill. App. 3d 851, 370 N.E.2d 1124 (exemption denied for school that taught humanistic psychology and "personal growth" through religion and philosophies such as gestalt and Eastern meditation). But see *School of Domestic Arts & Science v. Carr*, 322 Ill. 562, 153 N.E. 669 (1926) (holding property tax exemption appropriate for residential cooking, serving, sewing and household management school under statutory exemptions for property used for both charitable and educational purposes). See also *Illinois College of Optometry*, 21 Ill. 2d 219, 171 N.E.2d 620 (exemption allowed for nonprofit optometry school, but the court specifically found that the course of instruction echoed a traditional medical school course of study that was a prerequisite to degree in ophthalmology at University of Illinois medical school); *St. Francis Xavier Female Academy*, 233 Ill. 26, 84 N.E. 55 (exemption allowed for a school that offered a full array of traditional academic high school courses).

Secondly, in determining whether to permit the subject exemption, our courts have looked to whether the program in question substantially lessened what would otherwise have been a governmental obligation, *i.e.*, whether the state was otherwise required to offer such a program of study in a tax-supported public school. See *Milward*, 16 Ill. 2d 302, 157 N.E.2d 1 (exemption denied since state not required to offer mortuary management course of study); *Ray Schools*, 12 Ill. 2d 376, 146 N.E.2d 42 (exemption denied since commercial art, advertising, dress design, fashion merchandising and window display courses were substantially more specialized than those which the state was required to offer); *Winona School of Professional Photogra-*

*phy*, 211 Ill. App. 3d 565, 570 N.E.2d 523 (exemption denied where state not required to offer photography courses in question); *American College of Chest Physicians*, 202 Ill. App. 3d 59, 559 N.E.2d 774 (exemption denied where state not required to offer continuing medical education); *Oasis, Midwest Center for Human Potential*, 55 Ill. App. 3d 851, 370 N.E.2d 1124 (exemption denied where state not required to offer courses in humanistic psychology or self-improvement).

Both of these criteria receive full articulation in the supreme court decision in *Coyne Electrical School v. Paschen*, 12 Ill. 2d 387, 146 N.E.2d 73 (1957). In *Coyne*, the taxpayer seeking an exemption was a not-for-profit vocational training school that provided technical courses of study in electricity, radio, radar, and electronics through classes entitled, *inter alia*, "Electrical and Refrigeration," "Radio and Refrigeration," "Radio-Television," and "General Electrical Technicians." The courses of study available at the school lasted from 18 to 66 weeks in duration and classes were 35 hours per week. The *Coyne* court held that there should be no tax exemption under the statutory predecessor to section 19.1, noting that the plaintiff school did not provide traditional courses in math, rhetoric, language, science or history, and did not lessen the burden of taxation by offering courses that the state would otherwise have to offer in a tax-supported public school. In summary, the *Coyne* court stated as follows:

> "On the basis of the foregoing decisions it is manifest that two things are necessary to qualify a private institution for tax exemption as a school: first, a course of study which fits into the general scheme of education founded by the State and supported by public taxation; second, a course of study which substantially lessens what would otherwise be a governmental function and obligation." *Coyne*, 12 Ill. 2d at 392-93, 146 N.E.2d at 77.

Lastly, in determining whether to award the property tax exemption in question for schools/educational programs, our courts have looked to such factors as the duration of the course of study, whether classroom instruction was given, and whether degrees or diplomas were awarded. See generally *Milward*, 16 Ill. 2d 302, 157 N.E.2d 1 (exemption denied since, *inter alia*, four-week mortuary management courses were too brief and superficial); *Ray Schools*, 12 Ill. 2d 376, 146 N.E.2d 42 (exemption denied because, *inter alia*, monthly interior decorating and fashion courses were too short); *St. Francis Xavier Female Academy*, 233 Ill. 26, 84 N.E. 55 (granting exemption where diplomas were awarded after completion of course of study including traditional academic subjects as well as training in languages, musi-

cal instruments, and painting); *Winona School of Professional Photography*, 211 Ill. App. 3d 565, 570 N.E.2d 523 (exemption denied since, *inter alia*, no degrees were awarded and one-week courses were too short); *American College of Chest Physicians*, 202 Ill. App. 3d 59, 559 N.E.2d 774 (exemption denied to entity which held five-day medical seminars at locations other than the property for which the exemption was sought).

◼ In the instant case, under the two-pronged test as articulated by the court in *Coyne*, the Council is not entitled to a property tax exemption under section 19.1. First, under the first prong of that test, it is clear that the Council's carpentry program does not offer courses in traditional academic subjects but, rather, offers solely vocational training, with the exception of some brief and otherwise limited instruction in math skills geared toward enhancing a student's carpentry skills. Secondly, under the second prong of the test articulated in *Coyne*, the Council's carpentry training program does not provide a course of study that substantially lessens a governmental function or obligation. In that regard, although the state paid for the operation of the Washburne Trade School, it was not required to fund or to offer such a program in the first instance. See *Board of Certified Safety Professionals*, 112 Ill. 2d 542, 494 N.E.2d 485 (no exemption since Illinois does not license safety professionals); *American College of Chest Physicians*, 202 Ill. App. 3d 59, 559 N.E.2d 774 (no exemption because, *inter alia*, no Illinois requirement for continuing medical education); *Oasis, Midwest Center for Human Potential*, 55 Ill. App. 3d 851, 370 N.E.2d 1124 (no exemption since, *inter alia*, state not required to offer course of study in humanistic psychology). Thus, despite the fact that the Council funds the costly apprentice program in an amount roughly equal to that which the state formerly paid to operate that program, that funding does not relieve the state of any burden which it carried to offer any such program. While the Board of Education and the state may well have saved money by discontinuing the carpentry program in question, they were not obligated to provide such a program even if no enterprise in the private sector had undertaken to provide one.

Moreover, pursuant to the other aforementioned factors commonly considered by our courts in determining whether to grant the subject exemption, as noted, throughout the four-year program, students received only a few hours of classroom instruction in math skills during the preapprentice program and thereafter received only five days of classroom instruction each quarter (or 20 days of such instruction each year), which consisted solely of carpentry-related topics. Rather than training students in traditional academic subjects

in a classroom setting which lasted through the normal course of an academic year, students were primarily prepared to become carpenters through on-the-job training at locations other than the Elk Grove Village facility. As such, they were required to join the International Brotherhood of Carpenters union, to pay union dues, and to get a job as a carpenter's apprentice with a union contractor where they were required to spend 1,200 hours each year. Furthermore, the program, which requires only two years of high school for admission thereto, does not lead to any high school or other type of degree or diploma but, rather, leads to a certificate from the United States Department of Labor stating that the student had completed the program, and to a journeyman's certificate from the Brotherhood of Carpenters.

The Council contends that the state was in fact required to provide vocational training (and that, therefore, the carpentry program here relieved the state of a substantial tax burden) since the Illinois School Code (105 ILCS 5/1—1 *et seq.* (West 1996)) requires public school students to successfully complete, *inter alia*, one year chosen from music, art, foreign languages, or vocational training (see 105 ILCS 5/27—22(5) (West 1996)). See also 105 ILCS 5/27—22.2 (West 1996) (providing that vocational training courses must be included in any list of elective courses from which high school students must choose); 105 ILCS 5/10—22.20a (empowering the school board to provide vocational programs). We disagree. We first note that these provisions merely require the state to offer limited vocational courses as elective subjects adjunctive to the otherwise traditional course of academic study which would lead to the award of a high school diploma. They do not require the state to offer an intensive, extended and exclusive vocational training program over a two- to four-year period such as the one offered here in preparation for receipt of a journeyman's certificate from the United Brotherhood of Carpenters. Moreover, consistent with this conclusion that the Washburne program was never an obligatory one is the fact that, as the appellant concedes, Washburne no longer offers any such program, and the further fact that no evidence has been presented in this record to show that this program or one similar to it has ever been offered by any other public school. See generally *Deutsche Evangelisch*, 249 Ill. 132, 94 N.E. 162 (no school/educational use exemption for religious school entity because no affidavit presented to establish such property use).

The Council appears to contend that regardless of whether the state would originally have had the burden of offering the carpentry training program, the mere fact that it is duplicating a program previously offered in a publicly exempted school is sufficient to estab-

lish that the program "fits into the general scheme of education founded by the State and supported by public taxation *** [and] substantially lessens what would otherwise be a governmental function and obligation." *Coyne*, 12 Ill. 2d at 392-93, 146 N.E.2d at 77. We disagree.

The mere fact that a private organization or institution teaches a subject that is also taught in the public schools or, for that matter, even takes over a public school program, is not sufficient to justify a school property tax exemption, since the mere fact that a course of study was offered in a publicly funded school is insufficient by itself to establish that that subject fits within the general scheme of education. The case of *People ex rel. Brenza v. Turnverein Lincoln*, 8 Ill. 2d 198, 132 N.E.2d 499 (1956), is directly on point. There, an exemption was denied to a gymnastics and swimming school that duplicated courses offered in tax-supported public schools. In denying that exemption, the court stated:

> "In the ordinary school, physical education is a part, but only a part, of the curriculum. And while instruction in swimming and gymnastics is educational in a broad sense, it is not sufficient, standing alone, to bring an institution within the scope of our statute, where, as aforesaid, a restrictive meaning is intended." *Turnverein Lincoln*, 8 Ill. 2d at 202, 132 N.E.2d at 501.

Likewise, in *Ray Schools-Chicago-Inc. v. Cummins*, 12 Ill. 2d 376, 146 N.E.2d 42 (1957), the court denied an exemption to a school of commercial art, advertising, interior decoration, window display, photography, dress design and fashion merchandising, despite the fact that courses duplicated those offered in public schools, stating:

> "[T]he teaching of but a small part of the instruction given in ordinary schools does not suffice to constitute appellee an educational institution for which exemption was intended. *** [T]he instruction given by appellee *** is not as commonplace in ordinary schools, and perhaps not [even] as important to the public well-being generally, as [the] instruction in physical education [which did not qualify for a tax exemption in *Turnverein Lincoln*]." *Ray Schools*, 12 Ill. 2d at 384-85, 146 N.E.2d at 47.

Moreover, as previously noted, whether a private school program substantially lessened what would otherwise have been a governmental obligation is determined by considering whether the state was otherwise required to offer such a program of study in a tax-supported public school. See *Milward*, 16 Ill. 2d 302, 157 N.E.2d 1; *Ray Schools*, 12 Ill. 2d 376, 146 N.E.2d 42; *Winona School of Professional Photography*, 211 Ill. App. 3d 565, 570 N.E.2d 523; *American College of Chest Physicians*, 202 Ill. App. 3d 59, 559 N.E.2d 774; *Oasis*,

*Midwest Center for Human Potential*, 55 Ill. App. 3d 851, 370 N.E.2d 1124.

The Council contends that the decisions of *Association of American Medical Colleges v. Lorenz*, 17 Ill. 2d 125, 160 N.E.2d 763 (1959), *People ex rel. Goodman v. University of Illinois Foundation*, 388 Ill. 363, 58 N.E.2d 33 (1944), and *Illini Media Co. v. Department of Revenue*, 279 Ill. App. 3d 432, 664 N.E.2d 706 (1996), support its argument since, in those cases, exemptions were granted to entities that offered no courses of instruction whatsoever, traditionally academic or otherwise. However, those decisions are fully distinguishable. While the decisions in those cases would seem to permit exemptions even where the entities did not offer traditional classroom instruction in common academic areas of study, those entities in fact provided essential services to students enrolled in academic programs which themselves fully and unquestionably qualified for the school/ educational use tax exemption.

Thus, in *Association of American Medical Colleges*, the plaintiff, whose governing members constituted all United States medical schools, used the subject property to compile student information to help develop programs of instruction; to publish a directory of admission requirements and a journal regarding admissions requirements at the various medical schools; to sponsor admission tests and teaching institutes; to appraise the curricula of medical schools and colleges; and to evaluate prospective medical students. Similarly, in *University of Illinois Foundation* and in *Illini Media*, the plaintiffs used the subject property for the University of Illinois student union, residence halls, and an arcade, which collectively contained university offices and student services including a bookstore, a restaurant, and a barber shop, and for operating the University of Illinois radio station and for publishing its newspaper and one of its technical journals. As noted by the court in *University of Illinois Foundation*, these services entitled the plaintiffs to the subject exemption because they were "necessary and proper in conducting an educational institution." 388 Ill. at 371, 58 N.E.2d at 37. In those cases, each entity seeking the exemption functioned in a manner wholly subservient to the students attending the institutions that it served, which themselves offered the full range of traditional academic curricula in programs resulting in degrees and programs that the state was required to offer by law.

The Council also relies on the decisions of *Illinois College of Optometry v. Lorenz*, 21 Ill. 2d 219, 171 N.E.2d 620 (1961), and *School of Domestic Arts & Science v. Carr*, 322 Ill. 562, 153 N.E. 669 (1926), in support of its position on appeal that the variable involving the

subject matter of the curriculum is not dispositive of the exemption issue. However, those decisions, too, offer the plaintiff little or no help. Although the school curriculum in *Illinois College of Optometry* (where the exemption was allowed) was, at first glance, more akin to that of a vocational school than to a school offering a traditional academic course of study, the court there noted that the Illinois College of Optometry did in fact offer a traditional curriculum in that many tax-supported universities in other states include schools or departments of optometry as part of their university curriculum. The court went on to say:

"The University of Illinois, on the other hand, has no school, department or college of optometry. However, the courses taught by plaintiff are taught at the university and any medical doctor undertaking to specialize in ophthalmology, must have in his course of study the courses offered by plaintiff. In either case, the same courses are necessary before one may become qualified to practice optometry. To this extent then, and the number of optometry students is substantial, plaintiff is providing a course of instruction which duplicates that provided in the tax-supported university and its medical school." *Illinois College of Optometry*, 21 Ill. 2d at 223, 171 N.E.2d at 622.

Similarly, although the decision in *School of Domestic Arts & Science* would appear to contradict the line of cases that would grant the subject exemption only to schools that offer traditional, academic courses of study, the supreme court in *Coyne* expressly repudiated this aspect of that decision. The entity in *School of Domestic Arts & Science* was granted its exemption on a dual basis—both as a charitable and as an educational institution—insofar as it offered free courses in residential cooking, serving, sewing and household management. The *Coyne* court stated that the finding in *School of Domestic Arts & Science* that the entity there was entitled to an exemption as a school in addition to being entitled to an exemption as a charitable institution was mere surplusage, stating as follows:

"In view of the *** finding that [the] appellant [there] was a charitable organization exempt from taxation under the seventh paragraph of section 2 of the Revenue Act, it would appear that the finding of exemption as a school was surplusage. Additionally, we find no reason to say that the court's assumption in that case, without any analysis of the issue, serves either to broaden the constitutional definition of a school earlier established, or to bind us in this case. Each individual claim for tax exemption must be determined from the facts presented." *Coyne*, 12 Ill. 2d at 394, 146 N.E.2d at 77.

Thus, the pattern of precedents with respect to entitlement to a

school exemption, while not always fully consistent, nevertheless adheres to the basic standard articulated in *Coyne.* That standard would restrict the grant of the school exemption in the private sector to those programs that offer traditionally accepted academic subjects in the context of an established academic environment. This in turn would lessen the burden of taxation by offering courses that the state would otherwise be required to offer in a tax-supported public school. Under this standard, private schools offering commonly accepted grammar school, high school, college, and post-graduate courses of study could avail themselves of the exemption. The alternative of offering a wider window of exemption would run the risk of permitting the exemption for any commercial venture offering any training in singular skills and hobbies under the guise of self-improvement and would ultimately lead to the inclusion of enterprises such as karate, dance, and horseback-riding schools, as well as admittedly more useful, vocationally oriented schools such as those in beauty care, television repair, and refrigeration repair, or other similar courses of instruction such as those offered here in carpentry. In any event, such an extension of the school exemption would require a legislative initiative. Presumably, legislation could be drafted, if the legislature so chose, to extend the exemption to vocational schools without opening the door to every other so-called educational venture so as to bring about an unwarranted erosion of the tax base.

For the foregoing reasons, the judgment of the circuit court of Cook County is affirmed.

Affirmed.

COUSINS, P.J., and CAHILL, J., concur.